Lackland.

The decree in this case is wrong in giving to the appellee’s judgment priority over the deeds of trust. The deeds rvere admitted to record on the 6th day of June, upon acknowledgments made before the deputy clerk in the clerk’s office. The certificates of the deputy clerk shew that fact; and the appellee’s judgment was rendered at a term of the County Court which did not commence its session till the 8th of June, two days after the deeds were recorded. The deeds were therefore prior in point of time to the judgment. But the Court admitted parol evidence to contradict the certificates of the deputy clerk as to the regular acknowledgment of the deeds. The appellee was permitted to shew that the acknowledgments were not made in the office. In this the Court clearly erred ; and I will now proceed to shew that those certificates were conclusive. In doing so, I shall be led necessarily into a consideration somewhat in detail of the doctrines of estoppel, and the well settled principle that a record cannot be contradicted.
In 2 Tuck. Com. 45, (3 Bl. Com. 24,) it is said to be “a settled rule and maxim that nothing shall be averred against a record, nor shall any plea or even proof be admitted to the contrary; and if the existence of a record be denied, it shall be tried by nothing but itself, that is, upon bare inspection whether there be any such record or no; else there would be no end of disputes.” Farther on, p. 278, (3 Bl. Com. 331,) the same principle is again laid down upon the authority of Sir Ed. Coke. *215 “ A record or enrolment (says he) is a monument of so high a nature, and importeth in itself such absolute verity, that if it be pleaded that there is no such record, , , , . . , it shall not receive any trial by witness, jury or otherwise, but only by itself.” It may be said that these authorities apply more directly to the records of suits, and to the proceedings of the various Courts of justice as they are spread upon the order book, and signed by the presiding Judge or Justice. This may be ; but I expect to shew, both upon principle and authority, that the doctrine is not confined to the mere entries in Court, but that it has a more extensive application. I propose to shew that it applies to the memorial or certificate of the enrolment of a deed, particularly where the deed is acknowledged, as in this case, before the recording officer.
In the first place, I would observe, that none of the writers seem expressly to limit the doctrine to the mere entries in Court; although perhaps most of the examples referred to in exemplification of the doctrine, are records of this kind. Thus, a judgment is usually referred to by way of illustration, and this is universally allowed to operate as an estoppel: and Comyn, in his Digest, tit. “Estoppel,” (A 1,) in enumerating various matters of estoppel, says: “ If a man levies a fine, or suffers a recovery to A of the land of B, in the name of B, it shall be an estoppel to B, and he cannot avoid it, without a writ of deceit, for he cannot aver against the record.” So, says he, “if a man acknowledges a deed to be enrolled in Court, and it is enrolled of record, he cannot afterwards say non est factum — though it be acknowledged by his attorney for him and not in person, and even though the attorney had no special authority to do it.” But clearly the doctrine of estoppel is applicable to most records of a public nature. In 2 Smith’s Lead. Cas. 44 Law Lib. p. 431, estoppels are said to be of three kinds: 1. By matter of record. 2. By deed; *216 and 3. By matter in pais. Under the first are included Court rolls and the judgments of the Courts, judgments both in rem, and inter partes : and then a separate head at page 440, is devoted to estoppels “ quasi of recor(^” Under this head are embraced, amongst other things, grants of probáis and administrations, and the sentences of college visitors and courts martial. These are said to be conclusive against all the world. A judgment in rem is there defined to be “an adjudication pronounced upon the status of some particular subject matter by a tribunal having competent authority for that purposeand the distinction between the two kinds of judgments is, that while a judgment inter partes is binding as a general rule only upon parties and privies, a judgment in rem is conclusive against all the world. A grant of probat or administration is in the nature of a decree in rem, and although a mere ex parte proceeding, is conlusive against all the world.
Greenleaf in his Treatise on Evidence, (vol. I, p. 559-61,) in speaking of public “records" and documents, mentions the case of the books of “ official registers” and “ enrolment of deeds;" and with regard to their admissibility as evidence, he places these upon the same footing with the records of the Courts, the journals of the legislature, and the acts of that body. To official registers, being books kept by persons in public office, he attaches extraordinary confidence. “ The extraordinary degree of confidence (says he) which is reposed in such documents, is founded principally upon the circumstance that they have been made by authorized and accredited agents appointed for the purpose; but partly also on the publicity of their subject matter. Where the particular facts are enquired into and recorded for the benefit of the public, those who are empowered to act in making such investigations and memorials, are in fact the agents of all the individuals who compose the public, and every member of the community may *217 be supposed to be privy to the investigation. On the ground therefore of the credit due to agents so erripowered, and of the public nature of the facts themselves, such documents are entitled to an extraordinary degree of confidence ; and it is not necessary that they should be confirmed and sanctioned by the ordinary tests of truth. Besides this, it would often be difficult and often impossible to prove facts of a public nature by means of actual witnesses upon oath.”
Upon the same principle, it is said that the bonds of fiduciaries, such as guardians, executors and administrators, taken by a public functionary, have a high character of authenticity, and need not be verified by the ordinary tests of truth applied to merely private instruments, namely, the testimony of the subscribing witness ; but when they are taken from the proper public repository, it is only necessary to prove the identity of the obligor with the party in the action. (Id. 642.) By analogy to the case of a deed acknowledged, to be enrolled in Court, before referred to on the authority of Comyn, the obligors in such bonds, where the law requires them to be enrolled or recorded, would be estopped by the record, I presume, from pleading non est factum,.
In Saxton v. Nimms & als. 14 Mass. R. 315, it was held that the return of the freeholder upon a warrant from the selectmen for warning a meeting of the inhabitants of a school district, that he had warned them according to law, was conclusive, in an action by one of the inhabitants against the assessors, for assessing a tax on him, which had been voted at such meeting. Parker, C. J. said, “ the assessors had a right to presume that the meeting at which the money was raised, was lawfully warned, for by the records it appeared to be so.”
1 will here make a short digression from the authorities bearing immediately upon the point as to the conclusiveness of the certificates, in order to meet objec *218 tions which counsel may raise upon the other side. It may be said that the doctrine of estoppel is confined to parties and privies alone ; and it may be argued that as the judgment creditor in this case, M ’Dowell, was no party or privy to the act of the deputy clerk in making these certificates, he shall therefore not be estopped by the record of those certificates. It is certainly true as a general rule, that the doctrine of estoppel is limited to parties and privies; for one who is no party to a judgment shall not be estopped by it; indeed it cannot be used as evidence against him. But to this rule there are many exceptions, some of which will appear in the authorities before cited. Thus, in the passage before referred to from Comyn’s Dig., where it is said “if a man levies a fine, or suffers a recovery to A, of the land of B, in the name of B, it shall be an estoppel to B, and he cannot avoid it without a writ of deceit.” Here B is not privy to the proceeding, and yet he is said to be estopped by it. And so it would be, he tells us, if the acknowledgment of a deed be made by an attorney, who has no special authority to do it. So, grants of probats or administrations, and the sentences of college visitors, courts martial, &c. form exceptions to the rule, these being in the nature of judgments in rern. So do the proceedings of courts of admiralty : when a vessel is condemned as prize, it seems never to have been disputed that the sentence is conclusive upon all the world. 2 Smith’s Lead. Cas. p. 441, 44 Law Lib. Beeson’s adm’r v. Stephenson, 7 Leigh 107, affords also an instance in which a third person was held to be estopped, even by the record of a judgment to which he was neither party nor directly a privy.
But I would ask, may not the judgment creditor in this case, M’Doioell, be regarded as a party or privy to the act of the deputy clerk, in making these certificates? He is certainly a party to one of the deeds itself, although not placed in it precisely where he would *219 like to have been; and I am inclined to think that upon the principle laid down by Greenleaf, in the passage before cited, he is such a party or privy to the act of the deputy clerk as to be estopped by his certificates. The officer, (says he,) “is in fact the agent of all the individuals who compose the public, and every member of the community may be supposed to be privy to the investigation.” Besides, the registry of a deed being intended to operate as notice to the public, I presume all persons are precluded or estopped by the certificate of registry from averring the want of notice.
Again, it may be said, that the case of a record coram non judice is an exception to the general doctrine of estoppel; and by analogy to this exception, the counsel upon the other side will argue, that if the deputy clerk took the acknowledgment to these deeds out of his office, he was acting out of his jurisdiction, and therefore, upon the principle of a record coram non judice, that his certificates are void. It is true, the case of a record coram non judice does form an exception to the general doctrine ; but then the want of jurisdiction must appear upon the face of the record itself — and in this case it should appear from the certificates. For example, suppose the record of a Superior Court in a suit on a bond for less than 50 dollars, were produced in evidence. Here the want of jurisdiction would be manifest, and the record coram non judice and void; for that Court has jurisdiction only in matters of 50 dollars and upwards. But suppose the record produced shewed upon its face a recovery for 50 or 100 dollars, would it be competent for a party to shew that the Court had no jurisdiction, by attempting to prove by other evidence than the record itself, that he had owed a less sum than the judgment was rendered for? Again. Suppose the record of a Court shews upon its face that the Court was held at the place appointed bylaw; that four or five Justices or Judges were sitting upon the bench, and *220 that certain matters were transacted over which the law gives them jurisdiction. Would it be competent for a party to attempt to shew that the Court had no jurisdicti°n> by invalidating the record and proving either that the Court sat at a different place from that named in the record, or that a fewer number of Judges or Justices were present? Certainly not. The law considers that men acting in public stations, under the solemnity of an oath, must be trusted; and it is better that individual hardships should be occasionally tolerated by adhering to this principle, than by departing from it to establish an opposite principle, which might prove detrimental to the whole community. In 2 Smith’s Lead. Cas. p. 431, 44 Law Lib., a strong case is stated, which is precisely in point. The original report is said to be in 2 Barn. &. Adol. 262, the case of the Queen v. Carlisle. This was a criminal prosecution, and we may presume that the Court would here, if ever, relax the rigour of the doctrine. In that case the defendant had been convicted of a seditious libel, and he brought a writ of error in the Queen’s Bench, assigning for error in fact, that there was but one of the justices named in the commission present when the jury gave their verdict. On the record returned to the Queen’s Bench, (and which was made up in the ordinary way,) it appeared that a sufficient number of the justices were present, and the Court held that it was not competent to the defendant to question the fact so stated. Several other cases are there referred to, among others that of Molins v. Werby, which was a writ of error on a judgment in the Palace Court, said to be holden before Jam.es, Duke of Ormond: the error assigned was that the Court was not holden before the Duke, but before his deputy; and this was held not assignable, being contrary to the record. Other authorities are not wanting. The case of Gray v. Cookson & al. 16 East 13, decides among other principles, that where the warrant of a justice of *221 the peace states upon its face facts which are necessary ..... ... , , • ■ to give him jurisdiction over the subject matter, evidence ought not to be received for the purpose of shewing that he had no jurisdiction. See also 1 Chit. PL 183.
The true distinction upon this point of jurisdiction appears to me to be this: Where a public officer certifies to an act which the law has not placed within the scope of his official duties or powers, then his certificate is not conclusive of the fact; indeed, it is no evidence at all, for it relates to a matter out of his jurisdiction, and his certificate is no more than the statement of a private individual. For instance: Suppose the clerk should take the relinquishment of a feme covert to a deed, and admit the deed to record in his office. Here, as such a relinquishment can be taken only by the Court, or by two justices of the peace, the subject matter would be out of the clerk’s jurisdiction, and his certificate would not be entitled to any official credit. But where, as in this case, the law has invested a public officer with authority to do a certain act, where the subject matter is manifestly within the scope of his authority, then his certificate is entitled to full credit, and is conclusive upon all poiuts which are subjects of his jurisdiction. The principle of this distinction is fully recognized, I conceive, by the 498th section of 1 Greenl. on Ev. p. 573. Here, in the case of these deeds, the deputy clerk was authorized to take the acknowledgments — the subject matter, then, was entirely within his jurisdiction, and he was authorized to state both the time and the place of taking the acknowledgments, for these are material parts of the acknowledgments. His certificates should therefore be regarded as conclusive.
But even supposing that his jurisdiction extends no ■farther than the walls of his office, I contend, that in making the certificates in this case, he did not in point of fact, act out of his jurisdiction. It is proven beyond all doubt, that the deeds were admitted to record, in the *222 office, on the 6th day of June. The officer carried them there the moment after he took the acknowledgments. By the fact, then, of his admitting them to record whilst *'w his office, and there sanctioning what he had done elsew^ere, he may be regarded as having there certified to the acknowledgments. Whatever credit, therefore, the law may attach to the jurisdiction of place, is properly due to these certificates.
But I return from this digression to a review of the principles and authorities bearing more immediately upon the question of the conclusiveness of the certificates. And I had supposed the doctrine so well settled, that the acts of a public officer, proceeding under the sanction of an oath, are conclusive, as hardly to require references to authority. It is upon this principle that the return of a sheriff is conclusive, and parol evidence will not be received to contradict it, except in an action against himself for a false return. Goodall v. Stuart, 2 Hen. & Munf. 105. In this case, Judge Tucker said, the return was conclusive in every suit or contest between third persons, and could be contradicted only in an action against the officer. See, also, Purrington v. Loring, 7 Mass. R. 388; Wellington v. Gale, 13 Mass. R. 483; Slayton v. Inhab. Chester, 4 Mass. R. 478. So, in an action against bail, the return of non est inventus, is conclusive evidence of the avoidance of the debtor. Winchell v. Stiles, 15 Mass. R. 230. Neither can an officer falsify his own return ; Gardner v. Hosmer, 6 Mass. R. 327; and the return is good evidence in his own favour, even in an action against himself for a false return. Mass. Dig. by Minot 298. In relation to justices of the peace, so great is the confidence reposed in their acts, that Mr. Chitty says, they are “ not liable, if having jurisdiction over the subject matter, they produce a conviction drawn up in due form, and remaining in force. In such case, the conviction is a protection in any action against them for the act so done, and the *223 facts therein stated cannot be controverted in such action, (there being a regular commitment or warrant.”) 1 Chit. Pl. 183, citing 16 East 13; 12 East 67, and other authorities. The case in 16 East, to which I have already referred, was an action brought against justices for a conviction of the plaintiff without authority. It was contended, that the defendants had acted without the pale of their jurisdiction; but the justices produced their conviction drawn up in due form, and one of the principles decided was, that no act could be relied upon as an avoidance of the conviction, unless it appeared on the face of the conviction; and that if the conviction be good on the face of it, the production and proof of it at the trial, would justify the convicting magistrates as well in respect of such facts as were necessary to give them jurisdiction, as upon the merits of the conviction. But there are numerous decisions and authorities directly in point as to the conclusiveness of these certificates. Bissett v. Bissett, 1 Harr. & M’H. 211; Ridgely v. Howard, 3 Harr. & M’H. 321. These cited and approved in 2 Lomax’s Dig. p. 358, 9, § 19, 22; Tracy v. Jenks, 15 Pick. R. 465; Ames v. Phelps, 18 Pick. R. 314; King v. Hopper, 3 Price 495, (1 Eng. Excheq. Rep. 393;) Garrick v. Williams, 3 Taunt. R. 540, and the cases there referred to; also 1 Phil, on Ev. 387; Id. 464, in the note; Harvey v. Alexander, 1 Rand. 219; Harkins v. Forsythe, 11 Leigh 294. In the case of Harvey v. Alexander, a deed was executed and attested by subscribing witnesses. This deed was afterwards admitted to record, upon proof made before the clerk, by the subscribing witnesses. A question afterwards arose as to the time of the delivery, and parol evidence was introduced to shew, that it was delivered subsequent to its date. But the Court held, that although the witnesses might have proved before the clerk, when the deed was admitted to record, a delivery different from the day on which it bore date, yet as the clerk’s *224 certificate did not shew that they had done so, parol evidence was not afterwards admissible for that purpose. I rely upon this as an authority to shew, that the Court will not travel out of the record; and that case is stronger, if possible, than this; for it was not there proposed to contradict any thing which actually appeared upon the face of the certificate. It was a mere inference, which the law drew from the absence of any thing appearing in the certificate to the contrary, that the subscribing witnesses had proved before the clerk a delivery corresponding to the date of the deed. But the case of Harkins v. Forsythe, is an authority exactly in point; and upon principle, it settles this. There, two justices of the peace had certified the acknowledgment of a feme covert to a deed, and their certificate was held conclusive. In delivering the opinion of the Court in that case, Tucker, P. expressly said, that the same principle would apply to the certificate of the clerk. That decision was correct on many accounts; but there is one view in which the President of the Court placed the question, which has particular force in it. He said that the modern method of relinquishment before justices, had been substituted, for the convenience of the public, for the ancient mode of relinquishment by fine, which was matter of record, and could not be contradicted. He therefore placed the act of the justices out of Court, upon the same footing of solemnity with the records of the Court; because, he said, it could not have been the intention of the Legislature, in merely providing a substitute, to deny to that substitute the same degree of credit and conclusiveness, which, it was conceded, attached to the original proceeding. The same reasoning, I conceive, applies to the certificates of the clerk, and with equal propriety. Originally, the acknowledgment of a deed had to be taken in open Court. This was matter of record, and could not be contradicted. For the convenience of the public, two magistrates were *225 then authorized to take the acknowledgments out of Court — their certificate, we see, is conclusive: and then, for the still greater convenience of the public, the clerk and his deputy were authorized to act — they were substituted. It could not, certainly, have been the intention of the Legislature, when it authorized the clerk and his deputy to take the acknowledgments, to deny to the evidence of their acts the same credit and conclusiveness which accompanied the entry of an acknowledgment made in open Court, or the certificate of an acknowledgment made before magistrates. The object of the law was to place all acknowledgments, wheresoever and before whomsoever made, upon the same footing of validity, and the evidence of all acknowledgments upon the same footing of solemnity. This is manifest so far as the clerk is concerned, from the conclusion of the very section of the law which confers upon him the power to take the acknowledgments: “ Any conveyance so recorded, (*. e. on acknowledgment before the clerk or his deputy,) shall have the same legal validity, in all respects, as if it were proved in open Court.” 1 Rev. Code, p. 363, <§> 6. But, I would ask, what reason can there be for holding the acknowledgments conclusive (as they are) if made in Court, or before magistrates, and open to contradiction, if made before the clerk ? Is the clerk an officer less to be trusted ? Or does he not act under the same assurance of fidelity : the solemn assurance of an oath ?
The case of Horsely & al. v. Garth & al. 2 Gratt. 471, will be cited upon the other side. But that case is not in point. The facts were different, and the principle decided was not the same. The deed in that case had been already acknowledged before magistrates in the country. It was then sent to the office simply for registry. The clerk had nothing to do with the acknowledgment, but simply admitted the deed to record ; and the Court only decided, that his certificate as to the *226 time when he admitted the deed to record, was not conclusive. But here the question is, as to the acknowledgments ; for the party has altogether failed to shew, that the certificates are untrue as to the time when the deeds were admitted to record. The proof is positive, that the deputy clerk filed them in the ■ office and admitted them to record on the 6th day of June; and the only question is, are the certificates false as to the acknowledgments ? There is a great difference, I take it, between the act of taking an acknowledgment to a deed, and admitting a deed to record after it has been acknowledged. They are acts separate and distinct. The one is judicial, the other ministerial. Since the recording act, the clerk could always admit a deed to record. In doing so, he acted ministerially, and his certificate perhaps might be open to contradiction. But he could not take the acknowledgment to a deed, which is a judicial act, or in the nature of a judicial act, till the late statute expressly authorized him. And that statute, I contend, intended to place his act, and the evidence of his act, so far as every thing relates to the acknowledgment of the deed, precisely upon the footing of an acknowledgment in Court, which is conclusive. The case of an acknowledgment, then, stands upon grounds peculiar to itself.
But in the case referred to, great importance seems to have been attached by the Court to the fact, that an undue priority would have been given to the deed in consequence of the act of the person who delivered it to the clerk for recordation, and who, it was said, must be regarded as the agent of the cestuis que trust in procuring the false endorsement. But here the case is different. Priority will be given to the judgment over the deeds in consequence of the act of the officer himself. He was called upon by the parties to go to his office and take the acknowledgments there. But he proposed to take them where he was, and accordingly did *227 so. But for this act of his, the parties would have gone to the office, and the acknowledgments would have been good beyond dispute.
But even' the decision in Horsely v. Garth, would seem to have its qualifications. The Court expressly declined to say what would be the effect of the certificate upon the rights of third persons, claiming as purchasers without notice. That question is presented in this case; for the appellant Ammen has become the purchaser of the property conveyed by one of the deeds. He denies, in his answer, that he had any knowledge that the deeds were not acknowledged in the office, and there is no proof to shew that he had any notice of that fact at the time of the sale.
But suppose the certificates should be open to contradiction. I then contend, that the acknowledgments made on the 6th of June, may, under the particular circumstances, well be regarded as having been made in the office. The short distance from the clerk’s to the attorney’s office, not exceeding perhaps 150 yards; their being in sight of each other; the daily practice of the clerks every where to receive acknowledgments any where near their offices; the proposition in this case having come from the clerk himself, and the deeds having been carried to the office and filed there the moment afterwards; all these circumstances, it seems to me, may well authorize the Court in looking upon the acknowledgments as having been actually made in the office. It would be too technical to consider them otherwise. It would be to allow the act of the clerk to work an injury to the rights of innocent creditors, and to attribute a virtue and a magic to the mere walls of a building which it could never have been the intention of the Legislature to attach to them. A substantial and reasonable compliance with the provisions of the law, I submit, is all that is necessary.
*228 Hudson. The first question to be considered, is, whether the deeds in question were properly acknowledged and admitted to record on the 6th of June ? Although lodged in the office on that day, if they were not ProPerly admitted to record, they were not recorded deeds, within the act of Assembly. Dawson v. Thruston, &c. 2 Hen. & Munf. 132; Manns v. Givens & als. 7 Leigh 689. The testimony proves, that the deeds were acknowledged on the 6th of June, before a deputy clerk, not in the clerk’s office, but in the office of the attorney who prepared them. By the 6th section of our act to regulate conveyances, (1 Rev. Code, p. 363,) the clerks and their deputies are authorized to admit to record any conveyance, either on the acknowledgment of the party or parties, or the proof on oath of such acknowledgment, by the legal number of witnesses thereto, made in the office of the respective clerks. By the terms of this act, the clerk’s jurisdiction is circumscribed, as to place; and he has no authority to take such acknowledgment at any place beyond the limits prescribed by the law which creates his authority. This view is corroborated by reference to our recording acts, as they were originally passed. Previous to the year 1814, all deeds were to be acknowledged, I presume, in Court. The act of February 1814, (see Sess. Acts of 1813-14, p. 35,) besides authorizing the clerk or his deputy to take acknowledgments of deeds “in the office,” makes provision, at the same time, for the acknowledgment of deeds elsewhere, namely, before two justices.
But it is contended that the certificate of the clerk, as to the acknowledgment on the 6th of June, is conclusive. The case of Horsely v. Garth, 2 Gratt. 471, settles this question. In that case, a judgment creditor, claiming precedence as we do here, over a deed of trust, was permitted to falsify the clerk’s official certificate, by proving that it did not correctly shew the time when the deed was lodged with the clerk to be recorded; and *229 upon such proof, the judgment was held to overreach the deed. There are also some decisions in other States, to the effect that such certificate is ex parte, and not conclusive. Hardenbergh v. Schoonmaker, 4 Johns. R. 161; Tracy v. Hayner, 12 Johns. R. 469; Wyckoff v. Humphrey, 1 Johns. R. 498; Jackson v. Colden, 4 Cow. R. 266. The cases cited by the counsel for the appellant from 15 Pick. R. 465, and 18 Pick. R. 314, must have been decided upon the ground, that the registry acts of Massachusetts, by their peculiar phraseology, make the register’s certificate conclusive as to the time when a deed shall be considered as recorded. See Rev. Stat. Mass. p. 407. The case of Harkins v. Forsythe, is not in point.
But it is not necessary for us, in this case, to maintain the principle, to its full extent, that the clerk’s certificate may be falsified by other evidence. The ground here taken is, that the clerk acted out of his jurisdiction, and therefore that all his acts were void. We prove that the certificate relied on, was not an official act, and thereby remove the ground upon which the supposed credit is attached to it. Jurisdiction may be circumscribed as to place; and if the officer acts beyond his jurisdiction, all his acts are void. Starkie on Ev. vol. 2, pt. 4, p. 801, note 1. Nor can such officer give himself jurisdiction by certifying a falsehood. In Welch v. Nash, 8 East R. 394, Lord Ellenborough says: “ The justices cannot make facts, in order to give themselves jurisdiction, contrary to the truth of the case.” In Latham v. Edgerton, 9 Cow. R. 227, the Court say : 11 The principle that a record cannot be impeached by pleading, is not applicable to a case like this. The want of jurisdiction is a matter that may always be set up against a judgment, when sought to be enforced, or where any benefit is claimed under it. The want of jurisdiction makes it utterly void for any purpose.” In The People v. Cassels, 5 Hill’s R. 164, the Court *230 say: “No Court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts, on which jurisdiction depends.” This last was a case where the excess in the exercise of jurisdiction, was in respect to locality. There are cases, too, growing out of the acknowledgment of deeds. In Jackson v. Humphrey, 1 Johns. R. 498, it was held, “ that the Judge, before whom the acknowledgment of a deed was taken, was competent to prove that it was done out of the State. See Jackson v. Colden, 4 Cow. R. 266.
Baldwin, J. The registration of a deed comprises, in our law, the due authentication of the instrument, and its admission to record, and is therefore the exercise of a probat jurisdiction. It is the province of such a jurisdiction not to adjudicate the rights to property, but to establish certain matters of evidence by which such rights are to be affected. It acts exclusively upon muniments of title, and is confined to those of such importance as to become matters of public concernment, by the necessity of general notoriety, and of perpetuating their existence and preserving their contents. It follows from the nature and purposes of such a jurisdiction, that though its proceedings are often, and most generally, ex parte, yet that when perfected they are evidence for and against the whole world; that they cannot be impeached by extrinsic evidence in collateral controversies concerning the rights to property; and that, as a general rule, they cannot be so impeached even directly in a suit instituted for the very purpose. If this were otherwise, the obvious result would be, to defeat, in a great measure, the objects of the probat jurisdiction, and to introduce much uncertainty and confusion into the administration of justice.
The conclusiveness of the probat proceeding may be illustrated, but cannot be determined, by the principles *231 that govern the acts of administrative jurisdictions, charged with the adjudication and enforcement of the rights to property. It is immaterial whether the probat jurisdiction be vested in a Court or a commissioner, in a judicial or a ministerial officer, in a tribunal or an officer appointed for the sole purpose of its exercise, or in tribunals or officers established or appointed for other purposes; and whether the whole of it be confided to the same tribunal or officer, or a part of it, as the authentication of the instrument, to one, and another part of it, as the recordation of the instrument, to another. The whole probat proceeding, when perfected, is to be treated as one entire act; and its conclusiveness is the result of its peculiar nature and policy.
Every probat jurisdiction is with us the creature of the legislative will, and the instrument or instruments to which it relates, and the effect of the registration, or want of registration, upon the rights of property, depends upon the provisions of our statute law. But the registration itself, when complete, and appearing upon its face to have been had conformably to law, is the final act of an exclusive jurisdiction, designed to establish amongst all persons, and in all time, the very matter which extrinsic evidence would draw into question.
The degree of credit given to instruments by the exercise of probat jurisdictions, is generally, perhaps universally, the same; but the extent to which they are thereby accredited, varies according to the general purpose or declared intent of the Legislature. Thus the probat of a last will and testament involves the whole testamentary power, capacity and solemnities; verifies and establishes the instrument to all intents and purposes, and prevents it from being thereafter controverted on any ground whatever, (however erroneous the proceeding upon its face,) unless in an appellate forum, or by the final or re-probat provided for by law. But the registration of a deed declares nothing more than appears *232 upon the face of the proceeding, which must shew its conformity to the requisitions of the law: it authenticates the execution and recordation of the instrument, but leaves open all other questions affecting its validity. extent of credit, therefore, which it gives to the instrument, is limited, but the degree of it is, as a general rule, unlimited.
In regard to the registration of a deed, the entire jurisdiction is not, by our laws, uniformly or even generally vested in a single tribunal or authority. At first, deeds were directed to be recorded, upon proof or acknowledgment in Court, and now also by subsequent legislation, upon proof or acknowledgment in the office of the respective clerks, taken by them or their deputies, or upon the certificate under seal of any two justices of the peace for any county or corporation within this Commonwealth, or any other of the United States, or any territory thereof, of proof or acknowledgment there before them, or upon proof or acknowledgment out of the United States, before any Court of Law, or the mayor or other chief magistrate of any city, town or corporation, where the party shall dwell, certified by such Court, &c. in the manner such acts are usually certified by them, or upon the certificate of the clerk of any county or corporation of this State, of due admission to record in such Court, or the office thereof. And by a general statutory provision, all deeds of trust and mortgages, so authenticated and delivered to the clerk of the proper Court, to be recorded, shall take effect from the time when so delivered; and all other deeds and instruments so authenticated, which ought to be recorded, shall take effect from the time of their execution, if so delivered to the clerk within eight months thereafter; and if not so delivered within that period, from the time when they shall be so delivered.
It will thus be seen, that the probat jurisdiction in regard to deeds, is, for the most part, distributive, and *233 that the exercise of it consists of two parts; one of which is the taking officially the proof or acknowledgment of the instrument; and the other is its recordation, or what is the same thing in effect, the receiving it officially for that purpose: and the two together, when duly performed by the proper authorities, constitute a complete act of registration.
The registration of a deed is thus a matter of record, and the record is composed of the instrument itself, with the endorsements shewing its proof or acknowledgment, and admission to record; all of which are copied into the deed book, and a transcript therefrom, or from the originals, is, as well as the originals, evidence for and against all persons.
The degree of credit due to this record evidence, does not depend upon the question, whether this or that part of it, or the whole of it taken together, is to be considered as a judicial or as a ministerial act; but upon the consideration, that it is an institute of the law for purposes of a general, public and permanent interest, which cannot be otherwise accomplished. We must bear this peculiarity in mind, in reasoning by analogy from the degree of credit due to records in other jurisdictions.
It may be laid down without qualification, that the registration of a deed, regular upon its face, cannot be contradicted by evidence in any collateral controversy. Thus, in an action of ejectment for the recovery of land, if the title turns upon the due registration of a deed, the registry itself is the only legitimate evidence upon the question, and parol evidence is inadmissible to prove that it was not duly proved or acknowledged, and admitted to record, even though the registration was fraudulently procured.
In this respect, and to this extent, the record of registration corresponds with that of a judgment at law, rendered inter partes in a controversy concerning the *234 rights to property. The latter is conclusive evidence upon the same question, when again disputed in another action between the same parties; and no averment will be allowed that the judgment was obtained by fraud. ^ can imPeached on the ground of fraud only in a Court of Chancery. The registration of a deed, though not inter partes, is as conclusive as if it were, it being designed to affect all persons notwithstanding. It is a proceeding in rem, and though some proceedings in rem may be impeached collaterally when procured by fraud, it is not so in regard to one of this nature, which operates directly, not upon persons or property, but upon evidence, which it establishes as such in all future controversies. To permit the evidence so instituted to be impeached collaterally by evidence, would frustrate the very aim and purpose of the probat proceeding, and let loose those mischiefs of uncertainty and surprise which it was the object of the Legislature to repress. The registration of a deed can be no more impeached collaterally by evidence than the probat of a will, and for the like reasons, to an adequate extent.
In this respect, the registry of a deed also corresponds with a patent from the Commonwealth, which, if lawful upon its face, cannot be controverted collaterally, though fraudulently obtained. The only remedy is by a scire facias to repeal it, or by a bill in equity.
In this respect the registry of a deed corresponds also with the record of a fine, which is conclusive until reversed, or vacated, or relieved against in equity.
If I have shewn that the registration of a deed, regular upon its face, cannot be impeached collaterally for any cause whatever, it follows that, to the extent of the purposes contemplated by the Legislature, the proceeding must be conclusive, unless it can be reversed, or vacated, or relieved against in equity.
It cannot be reversed, there being no revising or appellate jurisdiction over the subject.
*235 It cannot be vacated, the authorities which were employed in the authentication and recordation of the instrument being functus officio, after the performance respectively of those duties; and there being no process known to the common law, which can be directed to such an object.
If it can be relieved against in equity, it must be upon principles of justice and good conscience, appropriate to that forum, which never interposes to correct the mere irregularities and errors of other jurisdictions. But there may be cases in which the registration of a deed would operate iniquitously and oppressively, unless the wrong can be redressed by the interposition of a Court of Equity, and in which it may be so redressed without the hazard of doing injustice to innocent persons.
It is not, however, the province of equity to re-examine that which has already been determined or established by another jurisdiction. The registry of a deed, when regular upon its face, ascertains in the first place, that it has been duly acknowledged or proved; and in the next place, that it has been duly admitted to record. Upon what principle is it that a Court of Equity can undertake to decide that the record evidence of these facts is not true ? It surely can have no general jurisdiction over the subject, for the purpose of contradicting by evidence, that which has already been established by evidence. And whenever it undertakes to interpose in such a case, it must be upon some equitable consideration forming an exception to the general rule.
In the case before us, the appellee, who is a creditor by judgment, has filed his bill impeaching the registration of the deeds of trust under which the appellants claim, which deeds appear from the registry to have been acknowledged before the clerk in his office, and by him admitted to record, a few days before the commencement of the term at which the appellee’s judgment against the grantor was recovered. The fact and *236 the time of the acknowledgment of the deeds are not controverted, and the sole ground of objection stated in the bill, is, that the acknowledgment was not taken by clerk in his office; and the parol evidence, if admiss^^e> seives to shew, that the acknowledgment was received by the clerk in an attorney’s office, in the same village, where the deeds were prepared and executed, and the clerk’s certificate endorsed, and immediately taken by him to the clerk’s office, and there deposited.
The essential parts of the transaction, it will be seen, were the acknowledgment of the deeds before the proper officer, and their admission to record; which furnished all the security the law could have contemplated for the authentication of the instruments, and the giving notice to the public of their existence. The conduct of the clerk in taking the acknowledgment beyond the walls of his office, was a mere irregularity, which occasioned no prejudice to any one. There might be force in the objection, if it appeared on the face of the proceeding, or if it could be shewn by evidence to some supervising tribunal charged by law with the duty of giving its sanction to. the registration. It would even then be strictissimi juris. But the proceeding is the final act of an exclusive jurisdiction, regular upon its face, and manifested by that record evidence which the law has appointed for the very purpose. How can it be impeached directly, for the cause alleged in the bill, any more than it could be collaterally in a Court of Law ? What ground does the case present for the exercise of equitable jurisdiction ? If there was a want of authority in the officer to take the acknowledgment out of his office, how can that give jurisdiction to a Court of Equity over the subject ? It is unquestionable that the clerk had authority to receive the acknowledgment in his office. He has certified that he did so : and it is no branch of equitable jurisdiction to impeach by evidence the authority of other jurisdictions.
*237 If upon parol evidence of this irregularity in the clerk, we were to hold the registration of these deeds fatally defective, the consequence, I apprehend, would be to shake many land titles within this Commonwealth. And we should have some questions of rather a singular nature for the cognizance of a Court of Equity; as, for example, whether the acknowledgment or proof of the instrument would be bad, if taken at, instead of within the door of the clerk’s office, or at the enclosure of the curtilage, or, as has doubtless occurred innumerable times, at the clerk’s table in the courthouse during the session of some Court, instead of the clerk’s office in the same, or an adjoining, or neighbouring building.
The authority of two justices to take the privy examination of a feme covert is a joint one, and if they exercise it separately, their conduct is quite as irregular, and as much beyond their jurisdiction, as that of a clerk in taking the acknowledgment of a deed out of his office. But in Ridgeley v. Howard, 3 Harr. & M’Hen. 321, on questions submitted by the Chancellor of Maryland to the Judges of the General Court, they held, 1st. That if it could appear from the evidence, that the justices acted separately in taking the examination of the feme, the proceeding would be void; but 2dly. That parol evidence of the fact was inadmissible in opposition to their official certificate.
In Bissett v. Bissett, 1 Harr. & M’Hen. 211, a bill was filed by a feme for a reconveyance, because the consideration of her deed, made while covert, was fictitious, and her acknowledgment extorted by duress, beating and ill usage; but the evidence was held inadmissible against the certificate of her privy examination, and the bill dismissed.
In Harkins v. Forsythe, &c. 11 Leigh 294, a bill having been brought to foreclose a mortgage executed by husband and wife, the latter, who survived her husband, by her answer, impeached and contradicted the *238 certificate by the justices of her privy examination, on the ground that the deed was not read to her, nor in any manner explained to her by the justices, which was proved by the evidence. But the certificate was held to ke conclusive, and the evidence inadmissible. There was, however, no ingredient of fraud in that case.
It must be conceded, that, where a party obtains a fraudulent advantage to the prejudice of the subsisting rights of another, though by the proceedings of an exclusive jurisdiction, if relief cannot be there had, it isa proper case for relief in a Court of Equity. A Court of Equity, therefore, relieves against a judgment at law fraudulently obtained, though rendered inter partes. Relief may also be had in equity against a fine, where any fraud or undue practice appears to have been used in obtaining it. 5 Cruise Dig. 299, tit. Fine.
It is this principle of fraud, upon which the decision of this Court in Horsely, &c. v. Garth, &c. 2 Gratt. 471, so much relied on by the counsel for the appellee, is founded. In that case, the deed, acknowledged before justices, was not delivered to the clerk for recordation,by the agent of the grantees, until after the lien of the judgment creditor had attached, by relation to the first day of the term; and yet the clerk, knowingly and wilfully, for the purpose of giving the registration the same effect as if made in due time ; contrary to law and the truth of the case, did certify that the deed was delivered to him and admitted to record at an earlier day, and so surreptitiously divested the priority of the judgment creditor. A principal must be taken to know what was known to his agent; 1 Hov. on Frauds 184; and therefore the attitude of the grantees in relation to the proceeding, was the same as if they had delivered the deed to the clerk with their own hands. Under such circumstances, a Court of Equity will not stop to enquire into the motives with which the act was done, when the effect of it was to make the registration ope *239 rate fraudulently in regard to the subsisting rights of the creditor entitled to priority. The grantees could not conscientiously avail themselves of an undue advantage so obtained, and redress could only be had by the interposition of a Court of Equity.
While, therefore, a Court of Equity, as well as a Court of Law, ought to uphold with a steady hand the conclusiveness of probat jurisdictions, it will not surrender any of its legitimate powers, the exercise of which may be necessary to prevent gross iniquity. It will not intermeddle, upon the mere weight and force of evidence, with the facts established by the registry of a deed, but at the same time it will not suffer subsisting rights to be defeated by false and surreptitious practices.
Indeed, I am not prepared to say that there may not be cases of mistake in the registration of deeds, in which a Court of Equity would not refuse to grant relief, where it could not otherwise be had. Let us suppose the case of two mortgages to different grantees, delivered by them respectively for recordation about the same time, and that the clerk, by a mere blunder, unquestionably established, should endorse upon one of them his certificate designed for the other, and thus unwittingly give priority to the one last delivered. The general rule, it is true, is, that the certificate cannot be contradicted: but it is equally true that no evidence is admissible to contradict the terms of a deed; and yet upon plain evidence of a mistake in reducing the contract to writing, a Court of Equity will give relief.
However this may be, the decision in Horsely, &c. v. Garth, &c. rests upon the ground of fraud, and has no application to the present case, in which there was no fraud, but a mere irregularity, overreaching no subsisting lien, and doing no injustice. It is not within the province of a Court of Equity to interpose, because' of such irregularities, any more than to take cognizance of technical errors in a fine, or irregularity in the commis *240 sioner who took the acknowledgment of it. 5 Cruise Dig. 300, tit. Fine.
This view of the subject, it seems to me, places the registration of deeds on the proper footing. The proceedinS a mere nullity, if imperfect upon its face. If regular upon its face, it cannot be impeached collaterally by any evidence whatever. Nor can it be so impeached directly for any cause, except in a Court of Equity, and there only upon some ground of equitable jurisdiction, which reaches the conscience of the party claiming under it, and deprives him of an undue and unconscionable advantage. Without these restrictions, I think it would be mischievous to draw into question the conclusiveness of this probat proceeding; and with them redress may be safely afforded in cases of peculiar hardship and injustice, except against those entitled to protection as innocent purchasers.
I think so much of the decree of the Circuit Court as gives priority to the appellee, instead of the appellants, ought to be reversed.
The other Judges concurred in the decree, which was as follows:
The Court is of opinion, that the Circuit Court erred in holding that the deeds of trust in the proceedings mentioned, were not duly admitted to record on the 6th day of June 1846, and consequently in giving priority over those deeds to the appellee’s subsequent judgment: It is therefore decreed and ordered, that the said decree be reversed and annulled, with costs to the appellants. And the cause is remanded to the Circuit Court, to be there proceeded in according to the principles of this decree.