Moncure, J.
This is a suit in equity brought by the appellee Mary Zumbro, against the appellant Henry Gi’ove, in the Circuit court of Augusta county, to have partition, and an allotment of her portion, being one-seventh, of the land in said county of which her father Isaac Moore died intestate, seized and possessed; and also to recover rents and profits. The appellant Grove claims the land by purchase from the heirs of said Moore; and especially claims the portion of said Mary Zumbro under a deed purporting to have been executed by her late husband John Zumbro and herself, bearing date the 14th day of October 1833, acknowledged by both before the Circuit court of Rutherford county in the state of Tennessee, where they then resided, certified to have been so acknowledged by the clerk and under the seal of said court on the same day, and, with the said certificate annexed, admitted to record in the clerk’s office of the County court of Augusta on the 2Sth of December 1833. The cause came on to be heard on the 11th day of June 1856; when the *503 court, being of opinion that the appellee’s acknowledgment of the deed of her husband and herself before the court in Tennessee is incompetent and insufficient to divest her of her interest, right and title to the said land, and that therefore she is entitled to an undivided interest of one-seventh thereof, and to the rents and profits on said interest since the 18th day of May 1850, the date of the death of her .said husband, decreed partition of the land and an account of rents and profits accordingly. From that decree this appeal has been obtained.
The objection taken to the jurisdiction of the court, was not relied on, but was waived in the argument; and properly so. The case involves two questions only. First, whether the Circuit court of Rutherford county in the state of Tennessee had authority to take the acknowledgment of the appellee; and if so, secondly, whether such acknowledgment was duly taken. And,
First, Had the said court authority to take the acknowledgment?
If it had, such authority must have been derived from 1 Rev. Code of 1819, ch. 99, § 15, p. 365, which was in force when the acknowledgment was taken. That section provides, that “ when a husband and his wife have sealed and delivered a writing, purporting to be a conveyance of any estate or interest, if she appear in court, and being examined privily and apart from her husband, by one of the judges thereof, shall declare to him that she did freely and willingly seal and deliver the said writing, to be then shown and explained to her, and wishes not to retract it, and shall before the said court acknowledge the said writing, so again shown to her, to be her act, such privy examination, acknowledgment and declaration shall be thereupon entered of record in such court.” The section then prescribes the manner and form in which *504 such privy examination and acknowledgment may be taken and certified by any two justices of the peace within the United States. And then provides, that “ when the privy examination, acknowledgment and declaration of a married woman shall have been so taken in court and entered of record, or certified by two magistrates, and delivered to the clerk to be recorded, and the deed also shall have been duly acknowledged or proven as to the husband, and delivered to the clerk to be recorded, pursuant to the directions of this act, such deed shall be as effectual in law to pass all the right, title and interest of the wife, as if she had been an unmarried woman.”
The question is, whether the “ court” authorized by the said 15th section to take such privy examination and acknowledgment, may be a court in any of the United States, or must be a court in the state of Virginia ? It will be seen that previous sections of the law prescribe the mode of acknowledgment of deeds by persons sui juris. And that the 15th and 16th sections prescribe the mode of privy examination and acknowledgment by married women. The word “ court” is sufficiently comprehensive to embrace courts in any of the United States, and there are no other words in the law which, expressly or by necessary implication, restrict it to courts in the state. The words, “ such privy examination, acknowledgment and declaration shall be thereupon entered of record in such court,” have not that effect. It is true that the legislature of this state cannot compel the courts of other states to enter any thing upon their records; any more than it can compel the magistrates of other states to take the acknowledgment of deeds. But it can prescribe the modes in which alone deeds may be acknowledged and authenticated out of the state for registration therein. And it can therefore require such acknowledgment, &c. of a married woman made before a court *505 of another state to be recorded in such court as a means of having the deed recorded in this state. If any such court should refuse to permit the entry to be made upon its record, this mode of authentication would, in that case, fail of effect. It is not probable, however, that there would ever be any such refusal. There would seem to be no good reason for restricting the meaning of the word “ court,” in the 15th section, to courts within the state. Such privy examination and acknowledgment may be taken by two justices in any of the United States. Why not by a court of record in any of them ? See 2 Lom. Dig. App. p. iv, and the note; from which it appears that the learned author is of that opinion.
But a brief review of the previous laws on the subject may serve to remove any doubt which would otherwise exist as to the meaning of the word in question.
Until 1776, there was no law of Virginia providing a mode of authenticating the acknowledgment of deeds in other countries for registration in this. At first, deeds were required to be acknowledged or proved in the General or County court in which they were to be recorded. See act of 1674, 2 Hen. St. 317; act of 1705, 3 Id. 319; and act of 1710, Id. 517. Then, two justices of the county in which a married woman resided were authorized to take her privy examination and acknowledgment, under a commission to be issued by the clerk of the General or County court. Act of 1734, 4 Id. 400; and act of 1748, 5 Id. 410. Of course this was merely a cumulative mode, intended to provide for the case of a married woman who could not conveniently travel to the General or County court. The original power of such court to take a privy examination and acknowledgment was still preserved. In October 1776 an act was passed, “ to enable persons living in other countries to dispose of their es *506 tates in this commonwealth with more ease and convenience.” 9 Id. 207. The 2d section of that act that deeds executed by persons sui juris residing in other countries, for the conveyance of land in this, might be acknowledged by them or proved by three or more witnesses before the mayor or other chief magistrate of the city, town or corporation wherein, or near to which, the grantors resided; or, if they resided in any of the states of America, and there happened to be no city or town corporate within the county wherein they resided, then they might be acknowledged by them before two j ustices or magistrates of the said county. The 3d section provided that where any person making such conveyance should be a feme covert, she might “personally acknowledge the same before such mayor or other chief magistrate, or before two justices or magistrates as aforesaid, according to her place of residence, and be by him or them previously examined privily and apart from her husband, whether she doth the same freely and voluntarily, and without his persuasions or threats.” This act was confined to the single purpose indicated in the title.
The next act on the subject is that of 1785, entitled “ an act for regulating conveyances,” 12 Id. 154. This is a veiy important act; being an enactment of one of the revised bills which were reported to the legislature in 1779 by the committee of revisors appointed by the act of 1776. It covers the whole subject referred to in the title, and is comprised almost entirely in one unbroken section: the second section merely prescribing the day from and after which the act should be in force. It first declares that conveyances of lands shall be by deed, and directs how, when and where they are to be recorded, and how, when and where marriage contracts are to be recorded. It then makes the following provision in regard to deeds executed by non-residents of the state, or by husband and *507 wife : “If the party who shall sign and seal any such writing reside not in Virginia, the acknowledgment by such party, or the proof by the number of witnesses requisite, of the sealing and delivering of the writing, before any court of law, or the mayor or other chief magistrate of any city, town or corporation of the county in which the party shall dwell, certified by such court or mayor, or chief magistrate, in the manner such acts are usually authenticated by them, and offered to the proper court to be recorded, within eighteen months after the sealing and delivering, shall be as effectual as if it had been in the last mentioned court. When husband and wife shall have sealed and delivered a writing, purporting to be a conveyance of any estate or interest, if she appear in court, and being examined privily and apart from her husband by one of the judges thereof, shall declare to him that she did freely and willingly seal and deliver the said writing, to be then shown and explained to her, and wishes not to retract it, and shall, before the said court, acknowledge the said writing, again shown to her, to be her act, or if before two justices of the peace of'that county in which she dwelleth, if her dwelling be in the United States of America, who may be empowered by commission to be issued by the clerk of the court wherein the writing ought to be recorded, to examine her privily and take her acknowledgment, the wife being examined privily and apart from her husband by those commissioners, shall declare that she willingly signed and sealed the said writing, to be then shown and explained to her by them, and consenteth that it may be recorded; and the said commissioners shall return, with the commission and thereunto annexed, a certificate under their hands and seals, of such privy examination by them, and of such declaration made and consent yielded by her: in either case, the said writing, acknowledged also by the hus *508 band, or proved by witnesses to be his act, and recorded together with such her privy examination and acknowledgment before the court, or together with such commission and certificate, shall not only be sufficient to convey or release any right of dower thereby intended to be conveyed or released, but be as effectual for every other purpose as if she were an unmarried woman. If the dwelling of the wife be not in the United States of America, the commission to examine her privily and take her acknowledgment, shall be directed to any two judges or justices of any court of law, or to the mayor or other chief magistrate of any city, town or corporation of the county in which the wife shall dwell, and may be executed by them in the same manner as a commission directed to two justices in the United States of America; and the certificate of the judges or justices of such court, or the certificate of such mayor or other chief magistrate, authenticated in the form and with the solemnity by them used in other acts, shall be as effectual as the like certificate of the justices in the United States of America.” Then follow other provisions of the act, which it is unnecessary to notice.
I do not think there can be any serious doubt but that under this act, the “ court,” which was authorized to take the privy examination and acknowledgment of a married woman, was not restricted to a court within the state, but embraced every court which was authorized by the previous part of the section to take the acknowledgment of a person sui juris, whether in or out of the state. The immediate antecedent of the “ court,” in the provision in regard to a married woman, is “ any court of law” in the provision in regard to a non-resident party; and the grammatical, as well as the reasonable construction of the act gives to the word in question the enlarged rather than the restricted sense.
*509 The next act is that of 1792, entitled, like that of 1785, “ an act for regulating conveyances.” 1 Stat. at Large, new series, 84. It copies, almost literally, the act of 1785, except that it embodies some additional provisions, and divides the subject, which that act comprehends in one section, into fourteen sections. The provisions of that act, which are herein before set out, are copied literally in the act of 1792 (except that the words, “ or in the district or county where the lands conveyed lie,” are inserted after the words, “ reside not in Virginia,” in the second line); that which relates to a deed executed by a non-resident party, being the 5th, and that which relates to a deed executed by a husband and wife, being the 6th and 7th sections of the latter act: the 7th section applying only to a wife whose dwelling is not in the United States. Certainly there is nothing in the act of 1792 which requires that the word in question should be construed in a more restricted sense in that act than in the act of 1785. The act of 1792 was slightly amended by an act passed in 1794, Id. 293; but the amendment is not material to the present enquiry.
By an act passed February 9,1814, Sess. Acts, p. 35, important provisions were adopted in regard to conveyances ; such as allowing them to be recorded on acknowledgment of the parties, or proof by witnesses in the clerk’s office, or on acknowledgment before two justices in the country, certified in due form, under seal. And by another act, passed December 20,1814, Sess. Acts, p. 75, it was provided, that the privy examination and acknowledgment of a feme covert might be taken without any commission, before any two justices, in any county or corporation within the United States, or the territories thereof, within which she might be.
Such, substantially, was the state of the law, so far as this case is concerned, when the revision of 1819 *510 took place. In that revision the law in regard to conveyances was embodied in an act entitled “ an act to into one act the several acts for regulating conveyances, and concerning wrongful alienations.” i Rev. Code 361, ch. 99. The 1st, 2d, 3d and 4th sections of that act correspond, almost literally, with the same sections of the act of 1792. The 5th section of the act of 1819 is like the 5th section of the act of 1792, except that it is limited to a party residing “ not in the United States, or any territory thereof instead of extending to a party residing “ not in Virginia, or in the district or county where the lands conveyed layand except also that it makes a small omission, not necessary to be noticed. The 15th and 16th sections of the act of 1819 correspond with the 6th and 7th sections of the act of 1792, relating to a deed executed by a husband and wife. The sections which in the act of 1819 intervene between the 5th and 15th, embody provisions of the act of February 9, 1814, with some amendment and some new provisions. The 15th section substantially agrees with the 6th section of the act of 1792, except the difference occasioned by the provision of the act of December 20, 1814, dispensing with a commission to take the privy examination and acknowledgment of a feme covert before any two justices within the United States, and prescribing the form of the certificate of the justices; and except a provision in regard to the effect of a covenant or warranty contained in the deed of a feme covert, which is inserted in the said 15th, but not in the said 6th section. The words of the former section are identical with those of the latter, in that part of each which relates to the appearance, examination and acknowledgment of a feme covert “ in court.” The words, “ such privy examination, acknowledgment and declaration shall be thereupon entered of record in such court,” follow in the former, but not in the latter *511 section. But the effect of these words is merely to condense and transpose a provision contained in the succeeding section of the act of 1792, and not to alter the sense.
If the acts of 1785 and 1792 authorized a court of law of any other state or country in which a married woman might reside, to take her privy examination and acknowledgment to a deed for land in this state, the act of 1819 did the same thing. The words in the former acts which conferred such authority, were literally copied in the latter, and must have the same meaning in each. That the 5th and 15th sections of the act of 1819, which correspond with the 5th and 6th sections of the act of 1792, are separated from each other by several sections compiled from intervening legislation, can certainly make no difference. Nor can it make any, so far as this case is concerned, that the 5th section of the act of 1819 is restricted to a party residing “ not in the United States, or any territory thereof,” instead of “ not in Virginia, or the district or county where the lands conveyed lie,” as in the 5th section of the act of 1792. The effect of that change in the act of 1819 was to repeal so much of the act of 1792 as authorized a court out of this state, but in the United States, to take the acknowledgment or proof of a deed executed by a person sui juris for land in this°state. It was at one time contended that such authority still existed under the act of 1792, notwithstanding the act of 1819; and that the latter did not repeal the former act in that respect. But this court decided otherwise in Lockridge v. Carlisle, 2 Leigh 186. Shortly before that decision was made, and probably while the case was pending in this court, an act was passed expressly authorizing any court of record in the United States, or any territory or district thereof, to take such acknowledgment or proof. Sup. Rev. Code, p. 213, ch. 155. That act would doubtless *512 have authorized any such court to take the privy examination and acknowledgment of a married woman also, if the legislature had not supposed that such authority already existed under the act of 1819. There was the same reason for the existence of the authority in the one case as in the other.
I am therefore of opinion that, even looking to the act of 1819 by itself, but especially tracing it to its source, and viewing it in connection with antecedent acts on the same subject, the Circuit court of Rutherford county had authority to take the acknowledgment in question. The propriety, and often the necessity of so tracing an act to its source, and viewing it in connection with antecedent acts for the purpose of ascertaining its meaning, is manifest, and has often been asserted by this court. In Shirley v. Long, 6 Rand. 744, Judge Carr, speaking upon this subject, in its application to that case, says : “ When we look at these consequences, I think we are bound to conclude that no change in the application of the words was intended; but that this blending of the two subjects (real and personal estate), has proceeded from inattention, added to that desire to condense, so visible in our revisáis, and which, in other instances, is carried so far as to sacrifice, in some degree, clearness to brevity. This renders it often necessary to the understanding of a law, that we should look back to its origin, and trace its progress; and for this purpose the Statutes at Large by Hening are invaluable.” The conclusion to which the court was led by the application of this rule of construction to that case, was opposed to the literal terms of the law in question. The conclusion to which we are led by the application of the rule to this case, is consistent with the letter as well as the spirit and reason of the law.
I have considered this question so much at length, not because it was necessary to do so for the purposes *513 of this case, but because of the importance of the question generally. I am informed that many deeds of married women for land in this state, have been recorded on certificates of their privy examination and acknowledgment before courts of record in other states; and that this course was pursued (in the belief that it was authorized by the acts of 1785, 1792 and 1819) down to the period when the present Code went into operation. If the fact be so, it is a matter of the first importance that those who hold lands under such deeds, should be quieted in their titles by the judgment of this court. And this is especially proper, since the present Code, p. 513, § 4, authorizes no other court to take the privy examination and acknowledgment of a married woman to a deed, but a court authorized to admit such deed to record. While the Code plainly announces this rule for the future, it seems to increase the doubt as to the pre-existing law, and makes it more proper that the doubt should be removed.
Having ascertained that the Circuit court of Rutherford county in the state of Tennessee had authority to take the acknowledgment of the appellee, the remaining enquiry is,
Secondly, Was it duly taken?
At common law a married woman is considered to be under the power of her husband, and can make no valid deed or other contract. The statute law enables her to convey her interest in real estate in a certain mode, prescribed mainly with a view to protect her against the coercion, persuasion or deception of her husband. It has long been held that the requisitions of the statute need not literally, but must substantially be complied with. To demand a literal compliance with them, would be, unnecessarily, to obstruct the alienation of property and throw a cloud over titles. To dispense with the substance of any of them, would *514 be to deprive the wife of some of those safeguards which the law has provided for her protection. Several cases are to be found in our reports, in which a substantial, has been accepted in lieu of a literal compliance with these requisitions. Harvey & wife v. Borden, 2 Wash. 156; Ware v. Carey, 2 Call 263; Langhorne v. Hobson, 4 Leigh 224; and Tod v. Baylor, Id. 498, are cases of that kind. In the first two cases, it did not expressly appear from the commission or certificate, that the persons wTho took and certified the acknowledgment were justices ; and yet the fact was presumed by the court, in the absence of evidence to the contrary. The last two cases occurred under the statute of 1792, and were cases of acknowledgment before justices of the peace under a commission. In Langhorne v. Hobson, most of the words used in the certificate of the justices were different from the words used in the law; and yet they were held to be equivalent. In Tod v. Baylor, it was not stated in the certificate that the deed was shown and explained to the wife by the commissioners; and yet it was held that the requisitions of the law were sufficiently complied with; the court being of opinion that the act of 1792, while it required the commissioners to show and explain the deed to the wife, did not require them to certify that they had done so: Though Tucker, P. was of opinion that it ought to appear from the certificate that she understood the deed, and that the fact did so appear in that case. On the other hand, Hairston v. Randolphs, 12 Leigh 445, is a case in which it was held that the requisitions of the law were not sufficiently complied with. That was a case of an acknowledgment before two justices of the peace, under the act of 1814 dispensing with a commission to the justices and prescribing the form of their certificate. It was conceded, that though the form of the certificate was given by law, yet it would be sufficient if to the same effect, *515 though not in the same words. Indeed the law so expressly declared. The certificate in that case varied from the form prescribed, in several respects; but it was considered that it substantially complied with the law except in one particular; that the justices did not certify that the deed was fully explained to the wife, nor was there any thing in the certificate from which her knowledge of its contents, at the time of her acknowledgment, could be inferred. And for that defect, the deed was decided to be void as to the wife.
All the cases before cited were cases of acknowledgments before justices. There has been no case before this court, so far as I am informed, as to the sufficiency of an acknowledgment before a court. The law has prescribed somewhat' different duties to be performed by a court and by justices taking the acknowledgment of a wife to a deed. But the duties in each case, whatever they are, must be substantially performed. In each case a mere authority is given by law, which must be pursued to make the act valid and binding. It must appear from the record of the court or the certificate of the justices, that this authority has been substantially pursued: though, if it so appear, the act, in either case, is generally conclusive. Harkins v. Forsyth, 11 Leigh 294; Carper v. McDowell, 5 Gratt. 212; Taliaferro v. Pryor, 12 Id. 277. As has been already stated, this is a case of an acknowledgment before a court under 1 B,ev. Code of 1819, p. 365, § 15 ; which, or so much of which as is pertinent to the present enquiry, has already been set out in this opinion. That act required in such cases, that three things should be entered of record in such court, viz: 1st, the privy examination of the wife: that is, that she was examined privily and apart from her husband, by one of the judges of the court; 2dly, her declaration; that is, that she declared to him, that she did freely and willingly seal and deliver the said writing, then *516 shown and explained to her, and wished not to retract it; and 3dly, her acknowledgment; that is, that, before the said court, she acknowledged the said writing, so again shown to her, to be her act. Have these requisitions been substantially complied with in this case t The certificate is in these words:
“ The state of Tennessee, Rutherford Circuit court, October term 1833 : The within deed of conveyance was presented in open court, and acknowledged by the said John Zumbro to be his act and deed for the purposes therein contained. The court thereupon proceeded to take the privy examination of the said Mary Zumbro, wife of the said John Zumbro, separate and apart from her said husband, who acknowledged that she executed said conveyance, freely and voluntarily, and without any fear, persuasion or coercion of her said husband. All which was, on motion, ordered to be certified. In testimony whereof,” &c.
This certificate wholly omits any declaration of the wife that she wished not to retract what she had done; and contains nothing which tends to show that she made any such declaration. Her wish to retract what she had done, is perfectly consistent with every thing contained in the certificate. The law, as we have seen, expressly required this declaration to be made and entered of record; and the requisition is very material. I am therefore compelled to say that in my opinion the certificate is fatally defective in this respect, and that the privy examination and acknowledgment of the wife were not duly taken.
It does not appear from the certificate that the deed was shown and explained to the wife at the time of her privy examination. The law required this to be done; though, according .to Tod v. Baylor, it did not require the fact to be certified. Tucker, P. was of opinion in that case, as before stated, that it ought at least to appear from the certificate that the wife understood *517 the deed. But the court did not so decide; and it never has been so decided. Nor is it necessary to decide the question in this case; and I therefore express no opinion upon it. If the fact ought to have so appeared in that case, it ought so to appear in this; for the act of 1792, under which that case occurred, used the same language in this respect as to an acknowledgment in court and an acknowledgment before justices. But the law was altered in regard to an acknowledgment before justices by the act of 1814, which prescribed the form of the certificate of the justices, in which the fact that the deed was explained to the wife is expressly stated. Hairston v. Randolphs, 12 Leigh 445, was decided under that act.
I think the decree ought to be affirmed.
The other judges concurred in the opinion of Moncure, J.
Decree affirmed.