December 6th.
Judge Cabell
delivered the opinion of the court.
The appellant, a judgment creditor of William T. Alexander, for a debt contracted in April, 1802, prefer- *233 j'ed his bill, seeking to set aside, as voluntary and frandnlent, two deeds executed by the said William T. Alexandec; one of them bearing date the 10th day of 1802, the other bearing date the 16th of December, 1804. He farther contends that if the deeds be not fraudulent, the last of them is void as to creditors, not having been recorded within the time required by Jaw. The appellees deny the fraud, and aver that both deeds were executed for valuable and meritorious consideration : And as to the deed of 1804, they aver that although it was not recorded within eight months from its date, it was recorded within eight months from the sealing and delivery thereof. The chancellor dismissed the bill of the appellant, who appealed to this court.
The deeds will be separately examined.
First. As to the deed of 10th October, 1802. The considerations expressed in the deed are “ natural love and affection,” and “ one dollar.”
The counsel for the appellant, considering this deed as voluntary on the face of it, contended that proof of valuable consideration was inadmissible, as being inconsistent with the deed. But the court is of opinion, that the question whether evidence inconsistent with the deed can bo admitted, does not arise in this cause. This is not the case of a deed purporting to be for good consideration only. It is, in express terms, for valuable as well as for good consideration. It is true that the valuable consideration expressed, is only one dollar: But, one dollar, viewed as a consideration, is as much a valuable consideration, as a million of dollars. The real question is, whether a deed, purporting to be for “ love and affection,” and for “ one dollar,” and assailed as being fraudulent as to creditors, can be supported by evidence shewing that in addition to the one dollar expressed, full value was received by the grantor. This question may be simplified by supposing the deed to have been between the same parties, and for the same purposes$ and that the only consi=
*234 deration expressed in the deed was the sum of one dollar paid by the grantee. It could hardly be doubted, that the evidence would be admissible in that case. Indeed, the principle of the objection made by the counsel for the appellant, that the evidence would be inconsistent with the deed, does not apply to such a case. It is believed to have been the practice, at an early period, both in England and in this country, for deeds not to express the actual sum, but a nominal one only : and yet the court has not seen a single case in which it has been held incompetent to the party claiming under the deed, to aver and prove the sum really given. The King vs. The Inhabitants of Scammonden,(j) is an authority in point, shewing that such evidence is admissible. In that case, the consideration expressed was 28l.; whereas the sum really given was 30?., which it became necessary to prove. Lord Kenyon said it was clear that the party might prove other considerations than those expressed in the deed. The case of Eppes vs. Randolph,(k) and Quarles vs. Lacy,(l) have a strong bearing on this point. In the latter case, there was no consideration expressed as moving from the wife, and only the .consideration of one dollar from the trustee. (See the original record.) There can be no reason for not extending the same rule to a deed which, in addition to a valuable, states also a good, consideration. On a view of the authorities, this court is clearly of opinion that such evidence is admissible ; and more especially where, as in the present case, the persons beneficially interested in the conveyance, are a feme covert, and an infant, to whom, in consequence of the incapacities under which they labour, greater indulgence is extended for any defects in points of form. And, in estimating the amount of the consideration, we are to take into the estimate every valuable consideration received by the grantor. It is not necessary that they should move from the person claiming under the deed. From whatevei source proceeding, they operate as *235 legal considerations for the conveyance, and enure to his benefit. On this principle we are to estimate the considerations moving from John Taliaferro, jun. the trustee.
But it is objected, that the said John Taliaferro, a witness relied on by the appellees, for the purpose of estabfishing the consideration, is incompetent on the score of interest. If this objection be intended to apply to him as a necessary party to the cause, in his character of trustee, it is clearly unsustainable. There can be no question that a naked trustee is a competent witness. It may also be remarked, as a general principle, that courts, at present, receive objections to witnesses with great caution as they relate to their competency 3 and that they incline to refer them to their credibility. It is alledged, however, that the objections in this case are too strong to be overcome ; for, that he has a direct interest in the cause, because of the rent of 600k per annum, which, by the deed aforesaid, he became bound to pay $ that the bill gave him notice that the deed was charged with fraud ; that all payments made by him, since the bill, were made in his own wrong, and that he is liable to a decree therefor in this suit: That the rent, in case the deed shall be set aside, ought to be subjected to the claims of creditors, the court does not deem necessary to affirm or deny. But, if Taliaferro shall have actually paid the rents, either to Alexander or to his assignees, the court is of opinion, that the ■said Taliaferro ought not, under the circumstances of this case, to be made liable therefor. The institution of the suit, or the fifing the bill impeaching the deed of fraud, but containing no prayer that he should not pay the rent over, was not of itself sufficient to justify him in withholding the rent from those to whom he had contracted to pay it. All the parties interested in the rent were before the court; and if the appellant wished to injoin the rent in the hands of Taliaferro, the court of chancery was always open to him to apply for an order to that effect. For aught that appears to this court, the appellant might have *236 preferred that the rent should be in other hands than those * °f John Taliaferro. His failure to obtain from the chancellor, such an order as has been mentioned, especially when his bill was silent on the subject, left John Taliaferro at liberty to pay the rent to those who, under the deed, were entitled to receive it. And this remark applies with equal force to that portion of the rent to which James G. Taliaferro became entitled, and which he released in consequence of a surrender to him of a portion of the property on which the rent was reserved. It is not charged in this bill, nor established hy proof, that there was any fraud practised by Taliaferro in obtaining the lease, nor that the rent was inadequate. The reverse, as to the rent,, is positively proved. In fine, the court does not perceive the weight of any of the objections to the competency of this witness.
John Taliaferro, being thus decided to be a competent witness, is he credible ? This is a question which the court is not disposed to argue. We doubt not that the counsel for the appellant, in the freedom and severity of his remarks on this topic, was urged by a sense of duty to his client, and actuated by a strong conviction that he was supported by the record. The view, however, which we have taken of the circumstances touching this point, is very different from that which presented itself to the appellant’s counsel. We have examined the record patiently and minutely, and we have not seen that John Taliaferro has done any thing that considering the relation in which he stood to the parties, he ought not to have done. We perceive nothing that is calculated to cast a shade on his character j nothing to impeach his conduct as a man, or his credit as a witness.
- The court is of opinion, that the testimony in the cause shows that Alexander received valuable consideration, full and adequate, for all the property conveyed by the deed of the 10th of October, 1802 ; and that that deed, therefore, stands discharged from every imputation of fraud.
*237 Secondly. As to the deed bearing date the 16th December, 1804. The considerations expressed are “ natural love and affection,” and “ live pounds.” What has been said, therefore, with respect to the deed of 1802, as to the propriety of admitting proof of farther consideration than that expressed, applies with equal force to the deed of 1804. The considerations proved, are the release of Mrs. Alexander’s right to all future support from her husband; the relinquishment of her right of dower in all her husband’s real estate; and the excess of the value of the property, which Mrs. Alexander once held, but which was sold by Alexander, over the value of the property previously settled on her; a portion of this property, however, being personal, had, by the marriage become Alexander’s, subject to his disposal and liable to his debts; it ought, therefore, to be excluded in estimating the amount of the valuable consideration of the deed of 1804. And even when excluded, the court is by no means certain that the valuable consideration was not full and adequate. Admit, however, that they were not full and adequate, it will not necessarily follow that the deed was mala fde, and fraudulent as to creditors: although the personal property brought by Mrs. Alexander to her husband and sold by him, can form no part of the valuable consideration of a deed settling other property on her, yet it may and ought to be taken into view as a meritorious consideration of such deed; and the deed will be supported or set aside according to circumstances. What are the circumstances of this case ? It appears that Alexander at the time of bis marriage, was possessed of a magnificent estate. His wife brought him another, not much inferior. It appears that he was extravagant and prodigal in the extreme. To supply the demands of this prodigality, a sale of property became necessary. The personal property acquired by his marriage, he had a right to sell; and he did sell much of it. He prevailed on her, moreover, to consent to his selling the whole of her real estate, and she con *238 veyed it accordingly : stipulating, however, that he should , , 1 „ „ , settle other lands upon her or equal value. lie promised moreover to make a similar settlement of other property, equal in value to the personal property which ho had got by her and which he had sold. These promises were partly performed by the deed of 1802, heretofore examined. In the latter part of the year 1804, he had become so intemperate in his habits, thatjhis wife could no longer live with him; and she resolved on a final separation from him. This resolution received the concurrence of Alexander himself. In contemplation of this event, Mrs. Alexander agreed, as before stated, to relinquish all claim on him for future support, and to relinquish her claim of dower in his real estate $ in consideration whereof, and of former promises made by him in relation to her personal property sold by him as aforesaid, Alexander agreed to convey, and did convey for her benefit, the property embraced by the deed of 1804 which property in addition to that conveyed by the deed of 1802, is proved to be of less value than the property, real and personal, which had been held by Mrs. Alexander in her own right, and which had been sold by her husband. There is no proof in the cause that at that time, or even as late as the last of April, or first of May, 1805, Alexander was much involved in debt. It is not pretended that at that time, he was otherwise than solvent. There is on the contrary positive proof that at that time, viz : in April or May, 1805, he was not materially indebted ; and that exclusive of the property conveyed by the said deed, and exclusive of as much more as would he sufficient to pay all his debts, he was worth a large estate. It is also proved by John S. Wei ford, that after the first of May, 1805, ho made a deed of gift to McFarlane and wife of ground rent in the town of Alexandria, amounting to about 1501. for ever. The said John S, Welford, who had long acted as the general agent of Alexander, and who declares himself well acquainted, in consequence of that agency, with his situation, express *239 Sy proves liim to have been solvent as late as the month * *■ of February, 1806, when his agency terminated; and moreover declares his belief, that if the claim of the appellant had been presented to him at any time during his agency, (which agency was general and notorious in Fredericksburg and in Alexandria and their vicinities,) satisfactory arrangements would have been made for its discharge. It is proved also, that Mrs. Alexander did not permit Alexander to incur any farther expense for her support, and that she relinquished, whenever required, her claim of dower to his real estate. Under all these circumstances, this court is not satisfied, as at present advised, that the said deed ought to be set aside as fraudulent, even as to a prior creditor of the said Alexander; and even, although a part of the consideraüon of that deed may not have been valuable, but meritorious only. But on this point the court gives no opinion.
But it is alledged, that the said deed has not been recorded within the time required by law, and that therefore, although not fraudulent, it is void as to creditors. The deed is an exhibit in the cause. It bears date the 16th December, 1804, and it appears by the certificate of the clerk that it was not proved till the 5th day of September, 1805. It does not appear, that the witnesses proved this deed otherwise than in the usual form $ it does not appear, that they proved it otherwise, than as a deed sealed and delivered on the day on which it bears date. Looking no farther than to the certificate of the clerk, we should be bound to say that it was not proved and recorded within the time required by law. But it is averred by the appellees, that the deed, although dated on the 16th day of December, 1804, was not, in fact, sealed and delivered till April or May, 1805; and they have taken depositions to prove the fact. It is contended, however, for the appellant, that whatever may have been the time of the sealing and delivery, yet if the deed bears date more than eight months before the time of proving it, and flic *240 record does Hot shew that the witnesses proving the deed, 1 proved that it was sealed and delivered within eight months before the time when it is fully proved and lodged to be recorded, it has no validity as a recorded deed, against a creditor. This is a question of great importance, and the court has found it one of some difficulty. Its solution depends on the sound construction of an act of Assembly prescribing a general regulation, juris positivi, merely. In such cases, the court has nothing to do with the hardship of the case, nor even with the principles of abstract justice. It is a great hardship, to the individual, that a fair purchaser of lands, for valuable consideration, shall lose the benefit of his purchase, because of unavoidable accidents preventing the attendance of his witnesses to prove his deed within the required time. Yet the case has frequently happened; and should the party complain of hardship, he would receive for answer, it a lex scripta est. The object of the legislature was to prescribe a general regulation, and to establish a criterion by which we may know, with greater certainty, who are the real owners of lands and tenements. For that purpose, the act of Assembly under which this deed was recorded, directs, that all conveyances of such property shall be by writing, sealed and delivered; and declares, that such conveyance shall not be good against a subsequent purchaser without notice, nor against any creditor, unless acknowledged or proved according to law, and recorded within eight months from the sealing and delivery thereof. And as to all deeds of trust and mortgages whatsoever, they are declared to be void as to all creditors, and subsequent purchasers, unless they shall be acknowledged or proved, and recorded as aforesaid. A deed, it is admitted, takes effect from its delivery, and not from its date. The policy of the law, therefore, (the giving information as to the situation of the title to lands,) would seem to require, that the time of de« livery shall appear on the record. For, how, otherwise, can creditors, or others, know who are the real owners of *241 land. If a deed has a date, the law intends it to have * t been delivered at the date.(m) When, therefore, a deed Laving a date, is proved by witnesses who say nothing as to the time of delivery, and is thereupon recorded, it stands recorded as a deed proved to have been delivered at its date; and if that date bo more than eight months before if is lodged to be recorded, the deed, although spread upon the record, is shewn by the record itself not to have been recorded according to law; and is, therefore, not good as a recorded deed. It has been held in England, that although a stranger is not concluded by an enrolment, but may aver that the deed was delivered at a day different from that which the enrolment purports, yet that the parties are concluded, and shall not be permitted to aver that a deed was delivered at a day since the date; for, by the same reason it might be averred that it was never delivered, (n) It is not necessary to decide that principle in this cause, and the court accordingly does not decide it. We moan to go no farther than to decide, that a deed not lodged to berccorded until eight months after its date, and not proved by the witnesses, on whose testimony it was recorded, to have been sealed and delivered within eight months before it was recorded, is not good as a recorded deed. On this ground vve are of opinion, that the deed in the record mentioned, bearing date the 16th Dec. 1804, is void as to the appellant. The decree of the chancellor, is therefore reversed so far as it dismissed the bill as to that deed, and is affirmed as to the residue; and the cause is remanded, See.
The court is of opinion, that the deed of the 10th Oct. 1803, was executed, bona fide, for full, adequate and valuable consideration, and stands discharged from every imputation of fraud. The court is farther of opinion, *242 that the deed of the 16th Dec. 1804, was executed bona fide,' for considerations valuable and meritorious, without any intention to defraud creditors ; but the court is of opinion, that the said deed, not having been recorded within the time required by law, is void as to the appellant, a creditor of the grantor Win, T. Alexander. So much of the decree, therefore, as is in conflict with this opinion, is reversed with costs, and the residue thereof is affirmed; and the cause is remanded for farther proceedings to be had therein, according to the principles now declared.

 3 Term Reports, 474.

 2 Call, 125.

 4 Mun. 251.

 2 Inst. 674.

 Comyn's Dig. 2 vol. p. 66, 67, referring to Savel’s Re. 91 ; 1 Leo. 183, 2 Leo. 122, and Ow. 138.