Turley, J.
delivered the opinion of the court.
On the 9th day of December, 1826, Robert Powell, then a citizen of the county of Sussex, State of Virginia, by a bill of sale of that date, signed and sealed by him, for the consideration of the sum of twelve hundred dollars, as expressed therein, bargained and sold unto his wife, .Mary L. Powell, four slaves, by name, Eliza, Jim, Chany and Cama, with warranty of title. Afterwards the said Robert Powell, and Mary L., his wife, moved to this State, and he, on the 25th day of March, in the year 1336, executed another conveyance, by which; in consideration of natural love and affection, among other donations therein specified, gave to his son, Thomas L. Powell, and to his two grand sons, Robert James Powell and Richard Henry Powell, a part of the slaves previously conveyed to his wife, Mary L., by the bill of sale of the 9th of September, 1826.
After the death of the said Robert Powell, the said Mary L., his wife and widow, filed this bill of complaint against the said Thomas L. Powell, Robert James Powell, and Richard Henry Powell, seeking to enforce against them her right to the slaves conveyed to her by her husband, Robert Powell, in his life time, and which were afterwards given to them by the conveyance of 1836, and reduced into possession by them.
It appears from the proof in the case, that in the year 1826, Robert Powell, then living in the State of Virginia, being desirous of selling his real estate situated therein, agreed with his wife that if .she would join him in such sale, and thereby relinquish her right of dower, which by the law of Virginia was secured to her in said land, and of which she would not be deprived by a sale made *479 by ber imsband without her' consent; he would in consideration * thereof convey to her the slaves Eliza, Jim, Chany and Cama, which, he accordingly did by the bill of sale, bearing date the 9th of December, 1826, and which is the bill of sale now sought to be set up against these defendants by a decree of this court.
This is a contract entered into by the husband and wife during their marriage, and all the questions arising in this case, are as to its validity in law and its obligatory force upon the husband and his voluntary assignees.
The common law, which in its origin, was of rude and harsh bearing upon the relations of life, and formed from the manners and customs of a stern and haughty people, held the rights of married women in no regard, in relation to personal estate or to contracts entered into during coverture.
They, therefore, could possess no personal property independently of their husbands, and make no contract in relation to any subject whatever, which would be held obligatory for or against them. But the advancement of civilization and the increase of commerce, which have always gone hand in hand, being productive of their usual results, in harmonizing and softening social relations, and in increasing the amount and value of personal property, the rule which prohibited married women, constituting • so important a branch of the human family every where, from becoming the owners thereof in their own right, and making contracts in relation thereto, was felt to be an evidence of barbarism, and the courts of England at a pretty early period, especially in chancery, began by one device and another to introduce into the administration of justice in relation to this- subject, principles from the civil law, more in consonance to justice and *480 humanity, than had been before applied. This was at first done with a trembling hand, but growing bolder by practice and precedent, a wide range was assumed, and principles laid down and established for the protection of married women in the enjoyment of their private estate, personal as well as real, upon a broad basis, and the law upon the subject has become various and complicated. A few of these principles it becomes necessary to investigate on this subject.
Although, as it has been observed, the common law will not allow a married woman to possess personal property independently of her husband, yet in equity, property of this character may be vested in her for her separate use, either before or during her marriage, and a Court of Chancery will protect her in the enjoyment thereof. An estate of this kind, before marriage may be created by the woman herself of her own property, or by the intended husband or by a stranger; during the marriage it may be created by the husband or by a stranger. Clancy on Husband and wife, book 111, chap. 1, page 251, and the authorities there cited.
It being a well settled principle then, that- married women may hold personal property to their separate use : the next matter of enquiry is, what power of disposition they possess over it. In the absence of any restriction by limitation of appointment, the rule in equity upon the subject is, that a feme covert acting with respect to her separate property, is competent to act in all respects as if she were a feme sole. Peacock vs. Monk, 2 Ves. sen. 190. Helm vs. Tenant, 1 B. C. C. 19; Clancy on Husband and Wife, 282; and this rule has been applied to all her dealings on the subject of that property. She may give or pledge or sell it or make any other bargain *481 with respect to it with any person, in the same manner as if she were an unmarried woman: she may give or sell it to her husband. 2d Ves. jun. 698. Pitt vs. Jackson, 2d B. C. C. 51; but in such case a court of equity looks at the transaction with a more jealous and watchful eye, than it would feel itself called upon to do in ordinary cases where each of the parties was sui juris, for although as to her separate property a married woman is considered in a court of equity as a feme sole, yet this does not free her from the natural influence of her husband, and therefore the court always views her dealings with him, even concerning her separate estate, with suspicion and scrutiny. In the case of Grigsby vs. Cox, 1 Ves. sen. 518, Lord Hardwicke in speaking of this subject, says: “And this will hold, though the act done by the wife is a transaction alone with the husband; although in that case a court of equity will have more jealousy over it, and therefore if there is any proof that the husband had any improper influence over the wife by ill or even extraordinary good usage, to induce her to it, the court might set it aside, but not without that.” Clancy on Husband and Wife, 347.
And as the wife may give and sell her separate estate to her husband, so she may also, with her 'separate estate» purchase from her husband, and the purchased property will be protected from her husband’s creditors, if the transaction between the husband and wife be bona fide. In the case of Lady Arundle vs. Phipps and Taunton, 10 Ves. jr. 139, Lord Eldon says: “It appears to, have been asserted in the court of King’s Bench that a husband and wife could not after marriage contract for a bona fide and valuable consideration for a transfer of property from the husband to the wife or trustees for her. The doctrine *482 is not so either at law or in equity. With great deference if Lord Ellenborough think otherwise, I am of opinion upon the doctrine of this Court, that if the purchase be bona fide, it is of no consequence whether it is before or after marriage. . '
In the case of Livingston vs. Livingston, 2 John. Chan. Rep. 537, Chancellor Kent says: “A husband and wife may contract for a bona fide and valuable consideration for a transfer of property from him to her, and that a married woman having separate property may purchase by the sale of it other property, even of her husband, and have it limited to her separate use.” See, also, Ath-erley’s Treatise on marriage settlements, pages 160 and 161. To the same point are Gorlick vs. Strong and Gorlick, page 440; Bullard vs. Briggs, 7 Pick. 533; Harvey vs. Alexander, 1 Rand. 219; Taylor vs. Moore, 2 Rand. 563; and Liles vs. Fleming, 1 Dev. Eq. 185.
As the wife may buy with her separate estate, property from her husband, and when the consideration is bona fide, hold it even against his creditors ; so she may receive property from him as a gift, which will be good as against him and all volunteers under him, but inoperative as against his creditors. Clancy on Husband and Wife, 277. In the case of Lucas vs. Lucas, 1 Atkyns’ Rep. 270, the Chancellor holds a gift from husband to his wife to be good as against himself, and says: “ That in this Court gifts between husband and wife have often been supported; and that it was so determined in Mrs. Hungerford and Lady- Cowper’s case before Sir Joseph Jekyll, when gifts from Lord Cowper in his life time were supported and secured by this court as part of the personal estate of Lady Cowper.”
*483 Iu the case of Slaning vs. Style, 3 Peere Will. 334. it is beld “ that where a husband voluntarily, and after marriage, authorized his wife, for her separate use, to make profit of all butter, eggs, pigs, poultry and fruit, beyond what is used in the family, out of which the wife saves one hundred pounds, which the husband borrows and dies, the Court will allow this agreement, and the wife shall come in as a creditor for this one hundred pounds, there being no defect of assets to pay debts.”
This is as much as is necessary upon this branch of the subject for the case now under consideration, and from it, it sufficiently appears that Mary L. Powell, the complainant in this case, might, upon legal principles, contract with her husband, Robert Powell, for the purchase of the negroes in dispute between her and the defendants; and that this contract will be enforced and. maintained by a court of Chancery, there being nothing else in the way to prevent it.
But it is insisted on the part of the defence that the sale cannot be supported for two reasons; first, because there is no sufficient consideration to support it; and second, because there are no words in the conveyance by which the negroes are limited to the separate use and maintenance of the wife. I will examine these two propositions seriatim.
1. Is the' contract of sale supported by a valuable consideration? The consideration expressed in the bill of sale is the sum of twelve hundred dollars, but the proof shews that this is not the true consideration; but that the assignment of her dower interest in the lands of her husband in the State of Virginia, and for his benefit, constituted the true consideration; and that this assignment was made at the request of her husband, and upon *484 his promise to convey to her in consideration thereof a portion of his negroes, which he did by the bill of sale. Is this assignment of dower a valuable consideration? We think it is. The wife’s right of dower in the lands of her husband in the State of Virginia, is a vested right, and it is greatly favored in law; it commences upon the marriage and is consummated upon the death of the husband, and she cannot be deprived of it without her joinder therein. It would seem then that of necessity, an agreement to relinquish and assign it must constitute a valuable consideration for an assignment of other property in lieu thereof. But we are not left without very respectable authority directly in support of the position.
In the case of Harvey vs. Alexander, 1 Rand. 219, it is held by the court of errors and appeals in the State of Virginia, that “ a wife parting with her dower in real property forms a sufficient consideration for a subsequent conveying of other property for her benefit.”
In the case of Bullard vs. Briggs, 7 Pick. Rep., a husband mortgaged his land, and in consideration of his wife’s releasing her dower to the mortgagee, conveyed the equity of redemption to a stranger in fee, for the benefit of the wife, but by a deed containing no declaration of the trust, and purporting to be for the consideration of a sum of money by the grantee; and it was held by the supreme judicial court of Massachusetts as against the creditors of the husband, “that the relinquishment of the right of dower was a valuable consideration for the conveyance of the equity of redemption, and that parol evidence was admissible to shew that. it was the true consideration.”
The argument of chief justice Parker, who delivered the. opinion of the court, is able, satisfactory and indeed *485 conclusive upon all tbe points involved in the consideration of the case.
In the case of Gorlick vs. Strong and Gorlick, 3 Page’s Ch. Rep. 440, where the husband who was about to sell His estate, agreed with his wife and with the knowledge of the purchaser, that if she would join in a deed of the premises, so as to release her dower, she should receive a certain portion of the purchase money as her separate property; and the purchaser gave a note to the wife for her share of the purchase money; and the agent for the wife in whose hands the note had been placed for use, loaned a part of the money received on the note and took a bond and mortgage directly to the wife, and the husband afterwards assigned the mortgage, without the assent of the wife or agent: it was held by Chancellor Walworth, that in equity the bond and mortgage belonged to the wife, and that she was entitled to the money due thereon for her separate use.
These authorities amply sustain the view of this court in relation to the proposition discussed.
2. Is the bill of sale so defective in this case as not to pass the interest in the slaves conveyed by it to the separate use of the complainant, because there are no words in it by which it can be held that they were intended to be limited to her separate use and maintenance.
We have seen _ that though by the common law, a married woman could not have and hold property to her separate use, yet equity has so far qualified this as" to permit her to take and enjoy property to her separate use, when it is given to her to that intent; but equity has done this with timidity, for it holds that each claim on the part of a married woman being against common *486 right, and it being a presumption of law that all property of which she becomes the owner is her husband’s ; a trust by which it is to be secured to her .separate use, free from his marital rights, should very distinctly express that intention. It, however, holds it to be immaterial in what form of phrase a trust of that nature is described, technical language not being deemed necessary, and it only being required that the intention of the gift shall appear manifestly to be for the wife’s separate enjoyment and in bar of the husband’s right.
This is unquestionably the law in relation to gifts, devises or settlements made in favor of married women by third persons, and perhaps to gifts and voluntary settlements, made after marriage by the husband, though that is not so clear. But is this principle applicable to the cases of purchases made by the wife from the husband for a good and valuable consideration paid him by her out of her estate, which has already been settled to her separate use and maintenance ? I think not, because in the first place the reason why such direct expression of intention is regarded, when gifts are made to the wife, as we have just seen, is because in contemplation of law, all gifts of property to the wife, are gifts to the husband," and that any other intendment is in violation of his rights. But- such is not the case when he himself sells and conveys property to his wife for a valuable consideration paid him out of her separate estate; in such case there is and can be no intendment in favor of his rights to the property thus conveyed, and it is absurd to talk about such conveyance being against his common right; for it is impossible to hold with regard to intention, that a sale of property to the wife by the husband for a valuable consideration paid him out of her own private *487 estate, can have any other design than the separate use and benefit of the wife. The husband parts from his interest by his conveyance, and if the operation of the conveyance be to vest the property in the wife for his benefit and use, and he be immediately remitted to all his original rights, then is the whole transaction a farce, and the law in permitting such contracts has placed itself in a very ridiculous position.
3. We have seen that a feme covert, acting with respect to her separate property, is competent to act in all respects as if she were a feme sole; she may deal with it as she chooses; she may sell it; she may give it away to any person: to her husband; she may buy his estate with it, and he may convey it to her, and without the intervention of a trustee: and all this may be done as if she were a feme sole. How is this possible, if it be necessary in the conveyances executed to her in relation thereto to treat her as a feme covert, and to insert therein words expressive of the intention that the property conveyed is for her separate use and maintenance, and without which the property will inure to the benefit of the husband, though it had been conveyed in exchange of that which is secured to her before?
'4. It is well established, that if a wife join her husband in a' mortgage of her real estate for his debts, he will be considered in equity as her debtor, for the money raised by the mortgage: so it is, if she advances her separate property to her husband as a loan; the only question in such case being, whether it was the intention of the wife to make a gift to the husband, or whether she meant he would be her debtor for the amount for which she had pledged or advanced her property. In the case of Partericke vs. Powlet, 2 Atk., 383, where the wife *488 had a separate estate by virtue of her marriage settlement ; and the husband having an incumbrance on his estate, the wife advanced money to pay it off, and the receipt from the mortgage was delivered to her: the question was, whether this was a bounty or a loan. Lord Iiardwicke said, “ if it is by way of a loan, she having a separate estate must be considered as a distinct person and is equally entitled to stand in the place of the mortgagee as a stranger.” So where the separate money of the wife is applied by the husband in the purchase of an estate, it will be an encumbrance upon it, to that extent, if the application of the money can be clearly established, and this though there be no covenant on the part of the husband to purchase and settle land. Clancy’s Husband and Wife, 612.
In the case of Slanning vs. Style, 3 Peere Will., 334, it was held, as we have heretofore seen, that where a husband borrowed of his wife one hundred pounds, her separate estate, he was held to be her debtor to that amount.
In the case of Elizabeth Huber vs. John Huber, administrator, 10 Ohio Rep., 371, it is held, that where a husband borrowed money of his wife, and gave her a note for it, the note is good, and after his death she may set it up in equity against his administrators.
Judge Grimke, who delivered the opinion of the court, says therein: “ A note from a husband to his wife is a very unusual thing, and this very circumstance in this case is, in consequence of its uncommonness, a convincing argument, that he intended to withdraw the money of which it was the evidence, from his own control, and to give it absolutely to his wife. There is no meaning to this transaction, unless this interpretation is put on it, and *489 when with this circumstance is combined the fact, that the money was not originally his, the presumption as to his intent is turned into a certainty, and enables a court of chancery to fasten upon it, in order completely to further his design.
In all these cases, the husband is held responsible for the payment of money, the separate property of the wife, appropriated to his use'; in some of them, the law raises the obligation to do so, in the others he raises it himself, and in all, there is no contract that the money is to be paid for the separate use and maintenance of the wife. The fact that it is so to be paid results necessarily from the fact, that the money used was raised out of the separate estate of the wife, or was money belonging to her for her separate use; the debt is an incident to the estate out of which it arose, and partakes of its character. In all these cases, if the money advanced by the wife, had been received from any other resource than her separate estate, there could have been no debt created thereby on the part of the husband, without an express stipulation to that effect, and it might have been necessary that such stipulation should contain words limiting such payment to the separate use of the wife.
In the cases above specified, the husband has been made responsible for the separate estate of his wife used by him, though there was no stipulation that it should be paid to her separate use; and so it would be clearly upon principle, when he has bought her' separate estate and contracted to pay her money for it. In such case, it is a debt due from him to her, for which he is liable, and when he pays it, she holds it without further stipulation as hers in her separate right, in the same manner as she held the property thus sold and bought, and so it *490 must necessarily be upon principle when a husband and wife exchange property, she giving to him her separate estate and receiving from him a part of his estate therefor; this estate so received, immediately by operation of law, assumes the place and character of that for which it was exchanged, and becomes the wife’s separate property, without specification to that effect in the conveyance.
The case of Bullard vs. Briggs, 7 Pick. Rep., 533, which has been before commented upon, in relation to another branch of this subject, is, as I think, an authority directly in point upon the proposition now under discussion. This case is almost ad idem with the present. Abner Bates was seized in fee of a tract of land; and being much indebted and embarrassed in his affairs, and from intemperate habits and impaired health was able to per* form but little labor for the maintenance of his family, and the chance of his surviving for any length of time, was very small; under these circumstances his friends advised him to raise a sum of money by mortgage of his house, sufficient for the payment of his debts; but in the execution of this project, it became necessary for his wife to relinquish her right of dower. As the main reliance for the support of the family, in all probability soon to be dependant upon her, was upon this interest, she refused to part with it, unless she could receive an equivalent interest conveyed for her benefit, as a consideration or indemnity. Having consulted her counsel as to the manner in which this object could be accomplished, it was agreed that she should release her dower by the mortgage deed, and in consideration thereof, should have the equity of redemption conveyed to her mother, who was to hold it in trust for her. In pursuance of this agreement the mortgage deed was executed to the Commonwealth Insurance *491 Company on tbe 28th day of August, 1824, but acknowledged and recorded on thé 1st day of September following, on which day Abner Bates conveyed to Deborah Briggs, the mother of his wife, in fee, all his interest in the premises subject to the mortgage: the consideration expressed in this deed was fifteen hundred dollars, but it was proved that was a nominal sum, and that the real consideration was as above stated. • No trust appeared upon the face of this deed, nor was there any declaration in relation thereto in writing at the time, but the whole transaction in relation thereto, rested in parol.
The equity of redemption was afterwards attached at the suit of one Hobbs, a creditor of Bates, and sold at execution sale to Bullard, the demandant, and Hobbs, and a deed was executed to them therefor, and it was now demanded against the assignee of the equity of redemption.
As we have seen, the court heard parol proof to establish the equity of the wife against the creditors of Bates, and decreed to her the equity of redemption.
In what case does this differ from the one under consideration ? In nothing but in the substitution of a trustee to secure the rights of the wife, and this constitutes no substantive difference; for a conveyance to a married woman for her separate use and maintenance will be sustained in chancery without the interposition of a trustee, and the husband will be held to supply his place, or if need be, the' court will appoint another; and when it is necessary that it should appear manifestly that the gift is for the wife’s separate enjoyment, and that the instrument under which it is given must clearly speak the donor’s intention to bar the husband’s right; the intervention of a trustee does not dispense with such necessity, and the instrument which does not express such intention, *492 conveys the estate for tbe use of the husband as effectually with a trustee interposed as without. Lind vs. Milnes, 2 Ves. jr.
Then, upon the authority of the case from 7th Pickering, the parol proof taken in this case to show the nature of the transaction between the complainant and her husband in relation to the conveyance of these negroes; that it was a purchase on her part for a valuable consideration, arising out of her relinquishment of her dower right in his lands, and that the bill of sale was made for her use in consideration of such relinquishment, and was not intended for the benefit of her husband, was properly taken and heard, and constitutes sufficient ground for this court, to hold that the property is the separate estate of the complainant.
4. If all this were not so, we have seen that a court of chancery view the dealings of a married woman with her husband in relation to her separate estate with suspicion and scrutiny, and, therefore, if there be any unfair advantage taken of her, she will be relieved against it either by setting aside the contract when that can be done and placing her in statu quo, or when that cannot be done, by giving her the full benefit of her contract, according to its true intent and meaning. Therefore, if she has sold her separate estate to her husband, and received in payment thereof other property, which has been conveyed to her by him, and it was intended that this property should be substituted in place of that conveyed and for her separate use; and if it were considered necessary in such case that there should be contained in the conveyance words expressive of that intention; if the husband neglected to insert them, and had used his wife’s property, so that it could not be restored to her, it would be a fraud on his part to insist upon his rights, resulting from this, *493 his own neglect, and a court of chancery would not permit him to avail himself of it, but would reform the conveyance, so as to make it speak the true intent of the parties.
We, therefore, think, upon every view of this case, that the complainant is entitled to her relief, according to her complaint, and affirm the decree of the .Chancellor.