Wright, J.
In 1868 James Singree recovered, in Morgan county, two judgments against James Welch, and, in 1872, filed in the common pleas of that county, the petition in this case, to subject equities in real estate.
Welch owned some land in Illinois, supposed to be worth $2,500 or $3,000, which was mortgaged for $1,200. lie *322 agreed, to trade this land with John McLucas, Welch to receive eighty-six acres in Morgan county, and some personal property. One-half of this eighty-six acres was to pay the Illinois mortgage, and was deeded to the mortgagee; the other half, forty-three acres, is what is. sought to be subjected to the payment of the judgments. The trade having been consummated, when it came to making deeds, Mrs. Mary Welch refused to sign the Illinois deed, unless the forty-three acres, now in dispute, was deeded to her. This was done. It is claimed that this was a fraudulent conveyance to the wife, and that the land should be subjected to the payment of the judgments, which were for a debt, contracted prior to the deed to the wife. Both the court of common pleas, and the district court, on appeal, found there was no fraud, and dismissed the petition.
Fraud is not presumed, in courts of justice, but it must be proven, and to make such proof evident, counsel for plaintiff in error argues thus. Mrs. Welch refused to sign the deed for the Illinois lands, conveying her dower, unless one-half of the Morgan county lands, or forty-three acres, were deeded to her. The Illinois land was worth $3,000; her dower therein, considering the ages of her husband and herself, was worth little over $200, therefore she got, for her release of dower, this forty-three acres, said to be worth $1,000, a value so disproportioned to her dower interest, as to be a fraud on her husband’s creditors.
Before we can set aside such a transaction as this, we must certainly be able to see that there was some fraud, either in intent or in fact, in the husband, directly or indirectly. If the facts themselves do not make a case of fraud, an intent or purpose of fraud, on the part of any other person than the husband,' would be nothing to the purpose. Now as to the original transaction, or contract for the trade, there could have been uo fraud either in fact or intent, as far as the husband was concerned. He sold his land in Illinois, and a large part of the proceeds went to pay his debts. So for, at least, he acted with propriety. Then, in payment, he also received some sheep, hay, corn, and per *323 sonal property, thus bringing within this state assets which would be liable to the payment of his debts. We can not, therefore, see in this, any evidence of fraud.
But, after this agreement for trade had all been completed, and when deeds were to be executed, the wife, in order to protect her rights, insisted that she would not sign, unless the lands in question were conveyed to her. Had she not a right to do this? Was. there any power, legal or otherwise, or any consideration, moral or equitable, that would coerce her signature against her will? It can not be said, in this state at least, that a married woman is not a free agent as to her separate property and dower lights. Is she otherwise circumstanced than would be a man called upon to sell his real estate ? If he insists upon a price, which may be disproportioned in point of value, and that price is given, can any one charge him with fraud ? Had not this Woman the right to say : “ You may have my signature upon my own terms, otherwise you shall not have it at all.”
But, it is said that such a holding might enable an embarrassed husband, to secure to himself independence, through the agency of his wife, while his creditors remained unsatisfied. To this it might be sufficient to reply, that in the case before us, no trace of the husband’s influence in this direction anywhere appears, and it is not even claimed in argument. In fact, the impression left upon reading the record is, that the stand the wife took was not induced by the husband, for it seems that he had already made the trade, and only when the deed was taken to her for execution, did she first make her terms known. This would seem to be the fair interpretation of her own testimony. And right here it might be well to allude to the advantage a trial court has over a court of error, in seeing and hearing wituesses. A small knowledge of human nature would enable a court, with the parties before them, to determine, as between husband and wife, who exercised control, and whether or not the wife was a mere passive instrument, in the hands of a master mind, to perpetrate fraud. Both were witnesses, and the plaintiff did not as *324 certain from them that there was any concerted arrangement upon the subject. But it is not necessary to leave the matter here. Eor the purposes of this case it may be conceded, that if the wife claimed and received for her rights, in her husband’s estate, an amount so entirely dis-proportioned to its value, as to be altogether unreasonable, and shocking to the moral sense, she might be held, as in the nature of a trustee for her husband’s creditors, and'the remarks already made may be considered as subject to this limitation. Is there then sirck- a disproportioued ratio of values as to indicate a fraud ?
It is claimed, as has been said, that the Illinois land was worth $3,000 her dower therein was worth, say plaintiff’s counsel, only $230, and she received the forty-three acres supposed to be worth $1,000. In the first place, it will be seen that all these figures are estimated merely, based upon probabities of life and death. Had her husband died the day before he sold the Illinois land, her dower therein might have been much more then the amount estimated. That is, had the land been in this state. But it was not. It was in Illinois, and what the dower laws of that state are, we do not know as the record does not show. Eor aught we can tell,, she may have been entitled to a half, in. fee or for life, or any other amount. Therefore the estimates of counsel are entirely at fault, when they attempt to put a value upon "a dower right, not knowing what that right is. It may be that in Illinois, in a certain event, she might have had a homestead, in addition to her dower.
What estimate can we make of the value of her rights in Ohio? The eighty-six acres in Morgan county, exchanged for the Illinois lands, seems to have been valued at $2,500. She therefore had an inchoate right of dower in all this. A part is sold, with her consent, leaving only the forty-three acres, worth $1,000, and this is all the husband has. What rights had his creditors in this property? Clearly they could not touch his homestead, of $500. So that there is only left as against creditors, in point of fact, $500 liable to debts. This she receives, as the considera *325 tion for her release of her entire interest in all her husband’s property. It is an error therefore to say that as against creditors, she has received $1,000. When we consider how uncertain all estimates must necessarily be as to the value of her inchoate interests, depending upon contingencies that make it almost impossible of certain ascertainment, we are unable to say that the consideration of $500 is so grossly inadequate as to amount to a fraud. At all events two courts, with the witnesses before them, have been unable to arrive at such a conclusion, and we can not say that they clearly and palpably erred as against the evidence.
We have adopted the figures generally as used by plaintiff’s counsel, and not averring their absolute accuracy, they at least are not exaggerated in favor of the wife. Nor have we taken into account the Illinois mortgage of $1,200, for in case the husband satisfied this mortgage, her dower would extend to the whole. This he did. And again, if she signed that mortgage without receiving any consideration, she might have been justified in claiming a recompense for it, in the trade subsequently made.
Counsel claim that the contingent right of dower does not afford a sufficient consideration to support the deed, and it is therefore voluntary and void as to creditors, referring the court to Weaver v. Gregg, 6 Ohio St. 550, the language of which is: “ She has a contingent possibility of interest in it, which may be released, but no property, no actual interest in it, which is the subject of grant or assignment.” If she may “ release ” her dower, she may certainly do so for a consideration, and refuse to do it without one. 2 Scribner on Dower, 7.
In Weaver v. Gregg, it was held that a sale in partition cut off the wife’s inchoate right of dower, and the reason given is that dower is not the result of contract, but the creature of positive law, founded on reasons of public policy, and subject, while it remains inchoate, to such modifications and qualifications as legislation may impose. We can very easily understand that if the legislature have given dower, the legislature may take it away, but no law has yet said *326 that a married woman can be compelled to sign a deed. The fact that this inchoate right may be cut off by certain judicial proceedings, such as partition, or appropriation for public purposes, does not tend to show that the right is not a valuable one. Every body knows that it is, for people will not buy real estate without a proper release. The fact that the wife may never realize anything from it, by reason of dying before her husband, does not prove it worthless, any more than the prospects of an heir are worthless in view of the contingency of his death before his ancestor.
In Quarles v. Lacy, 4 Munf. 251, it is held as follows : “Although it is not competent to a husband, after his marriage, to defeat or obstruct his creditors, by selling or exchanging his property and taking a conveyance of the money or other property received therefor, to the use or for the benefit of his wife and family (such conveyances being deemed voluntary and fraudulent as to creditors); yet the case -may be otherwise in relation to so much of such money or other property as goes to compensate the just interests of the wife. If, theretofe, the wife relinquish her right of dower in other land, in consideration of such conveyance, the value of such dower ought to be saved to her in opposition to the claims of her husband’s creditors.” In this case the transaction was at the instance of her husband. Ballard v. Briggs, 7 Pick. 533; Nims v. Bigelow, 45 N. H. 343; Ward v. Grotty, 4 Met. (Ky.), 59.
In Hoot v. Sorrell, 11 Ala. 386, the syllabus is: “ Where the wife, as an inducement to release her contingent right of dower, stipulates for the settlement of personal property to her separate use, which is worth half as much as the lands are sold for, the transaction will not be adjudged void, in the absence of proof implicating the wife in a want of good faith, merely because the property settled is of greater value than the consideration given for the settlement.”
This case was fully argued and elaborately decided, and it was held that the release of contingent dower, clearly is *327 sufficient consideration for a settlement, and that although she received more than the value of her dower, even had it been a vested interest, this alone can not be held to be fraudulent. “ Her contingent right could only be acquired by her relinquishment. If in good faith she placed an estimate upon it, far beyond its true value, we know of no warrant for the imputation of maleé fides. It can not be predicated of the disparity in value between what she yielded up and what she received in return. The difference is not, under the circumstances of the case, so great as to shock the common sense of mankind and furnish iu itself conclusive evidence of fraud. If fraud is not a necessary deduction, then the irregularity between the property settled and the consideration for the settlement will not authorize a court of equity to set it aside.”
The court further say : “ If the wife, in relinquishing her contingent interest, may stipulate for an equivalent, what rule inhibits her from making the best bargain she can, consistently with honesty and fair dealing ? Equity will not adjust with the most exact scales (even were it possible) the relative value of the interest renounced, and the money or other thing given for it. The difficulty of estimating the worth of a right of dower, which may or may not attach the uncertain, immaginary, and fluctuating value of land in this county, all considered, should induce much hesitation before any tribunal would pronounce against a transaction like the present, merely because the wife received an immediate interest of greater market value than her dower would have been, had it actually vested in possession. ¥e repeat that she might not thus have appreciated it. The effect of fraud, in fact, would be to divest the wife even of an equivalent; the proof, therefore, should be most convincing to establish it.” Harvey v. Alexander, 1 Rand. 219; Caldwell v. Bower, 17 Mo. 564; Taylor v. Moore, 2 Rand. 573; Garlick v. Strong, 3 Paige, 440.
In view of the whole case, therefore, we are unable to discover that a fraud has been perpetrated, with that en *328 tire clearness which would justify us in interfering with the findings of the court below, and the judgment will be affirmed.

Judgment affirmed.