BURKS, J.,
delivered the opinion of the court.
It is admitted by all parties that the judgments of Sneed and Vowles’ executor are valid liens on the lands sold and conveyed by Phillips, after the recovery *of ' the judgments, to John G. Boatwright, under whom the appellee Oberdorfer claims, and to John C. Hughes, under whom the appellants claim; and the controversy is as to the order in which these lands should be subjected to the satisfaction of said judgments.
The statute (Code of 1873, ch. 182, § 10) *513 provides, that “where the real estate liable to the lien of a judgment is more than sufficient to satisfy the same, and it or any part of it has been aliened, as between the alienees for value, that which was aliened last shall, in equity, be first liable, and so on with successive alienations until the whole judgment is satisfied. And as between alienees who are volunteers under such judgment debtor, the same rule as to the order of liability shall prevail; but any part of such real estate retained by the debtor shall be first liable to the satisfaction of the judgment.
Of the lands sold and conveyed as aforesaid to Hughes and Boatwright respectively, which parcel “was aliened last?” is the first question; and its solution depends solely on the dates of the delivery of the several deeds of conveyance. There is no evidence of any preceding executory agreements between the parties.
A deed takes effect from its delivery, and such delivery may. like any other fact, be established either by direct proof or by circumstances. To enable us to determine when the deeds in question were delivered, we have in the record — and that is all we have to aid us — the deeds themselves, and the certificates of acknowledgment and admission to record. The deed to Hughes bears date on the first day of January, I860, that to Boat-wright on the first day of February, 1860; both were acknowledged by the grantor before the same justice of the peace on the same day (February 1, 1860), and the former was admitted to record on the *13th day of April, 1860. and the latter
on the 24th day of February, I860. In the absence of any distinct and direct proof of the time of delivery, what are we to infer as to the time from these papers and their dates? It seems to us that in such a case the rule as laid down in Harvey and others v. Alexander and others, 1 Rand. 219, 241, must govern. In the opinion of the court by Judge Cabell, he said: “If a deed has a date, the law intends it to have been delivered at the date. When, therefore, a deed having a date is proved by witnesses who say nothing as to the time of delivery, and is thereupon recorded, it stands recorded as a deed proved to have been delivered at its date.” And with this accords what was said by Judge Daniel, speaking for the court in Rogers v. McClner’s adm’r and others, 4 Gratt. 81, 83. We perceive no distinction in principle between the presumption of delivery arising from the proof by witnesses and the acknowledgment before a justice. Recordation is the object in both cases. But a deed delivered is valid between the parties without registration. It is only necessary to record it to secure protection against third parties— creditors and purchasers. A certified acknowledgment for this purpose is by no means inconsistent with a prior delivery, and is not, at all events, sufficient of itself to rebut the presumption arising from the date of the instrument. Tt may very well happen that a deed is delivered and accepted. either with an intention not to record it at all, or to have it acknowledged for that purpose at a future time.
We are of opinion, therefore, that upon the record before us it must be considered that the deeds to Hughes and Boatwright were severally delivered at their respective dates, and as the deed to the latter was last delivered, the land conveyed by it was. “aliened last.” The justice, in his certificate to Hughes’ deed, ’^describes. it by an improper date; but the error is corrected by the deed itself.
But it is contended for Oberdorfer, that even if the lands conveyed to Boatwright were the lands “aliened last,” yet at the time of the alienation, the prior deed to Hughes had not been recorded — that Boatwright had no notice of it, actual dr constructive — and as to. him, that it was void under the fifth section of chapter 114 of the Code (1873). That section declares, that every deed (among other written instruments enumerated) conveying real estate “shall be void as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record,” &c.; and it is insisted, that Boat-wright, in his relation to Hughes, although they were purchasers of different parcels of land, was a “subsequent purchaser” within the meaning of this section and therefore as to him the deed to Hughes was void.
We cannot give our assent to this construction. By “subsequent purchasers” are intended, as we think, purchasers of the same subject embraced in the instrument which is declared to be void. This would seem to be the natural construction of the section considered alone, but it is strengthened by section 11 of the same chapter, which defines or explains the words “creditors” and “purchasers” as used in any previous section, and declares that they “shall not be restricted to the protection of creditors of, and purchasers from the grantor, but shall extend to and embrace all creditors and purchasers who, but for the deed or writing, would have had title to the property conveyed, or a right to subject it to their debts.” This section was reported by the revisors and its adoption recommended “to put an end to the judicial strife” exhibited in the decisions in Anderson v. Anderson, 2 Call. 198; Pierce v. Turner, 5 *Cranch. 154; Land v. Jeffries, 5 Rand. 211; Thomas v. Gaines. 1 Gratt. 347. See Report of Revisors, 615.
It will be observed, that the “purchasers” referred to in the latter part of the section, are “purchasers who, but for the deed or writing, would have had title to the property conveyed” — that is, purchasers and, of necessity. subsequent purchasers of the same property conveyed to a prior purchaser; and it would seem to be a fair inference _ that by “purchasers from the grantor” mentioned.in that connection were in like manner intended subsequent purchasers from the grantor of the same subject conveyed by him to a previous purchaser.
Again, if the construction contended for by the learned counsel of Oberdorfer were sound, we should reasonably expect to find it recognized by some exception or modifica- ‘ tion engrafted upon the 10th section of *514 chapter 183 (already quoted), which fixes the order in which the aliened lands shall be subjected; but we there find no such exception or modification.
The conclusion is, that the land conveyed to Boatwright, now held by Oberdorfer, ■must be subjected to the satisfaction of the judgments before the land sold to Hughes can be resorted to for that purpose, and consequently that the decree of February 9, 1877; fixing a prior liability on the land last mentioned, is to that extent erroneous.
The remaining questions relate to the order in which the land sold by the executor of Hughes is liable as among the several alienees. It appears, that it was divided and sold in lots or parcels, five in number. They were all advertised and sold by auction at the same place, on the same day, and on the same terms, and the sale was of all, one after another, in regular succession from No. 1 to No. 5. The terms were ten per cent, of the purchase money in cash for the residue upon a *credit in instalments, the purchasers to give bonds, the lands to be conveyed and deeds of trust given on the same to secure payment of the bonds — the deeds of sale and trust deeds to be executed and remain with the vendor until payment and in the meantime to be recorded or not at his option. Payne, Jackson and Via, in the order in which they are named, each bought one lot, and Dudley -the remaining two lots, the last sold. Payne, by consent of parties, was substituted as purchaser of the lot bought by Via: so that Dudley and Payne were purchasers, each of two lots and Jackson of one. The purchasers were at once let into possession under their respective contracts and they retained possession thereunder, the payments by the parties respectively being completed and the deeds delivered and admitted to record at different times.
Upon these facts and circumstances, we are of opinion that the sales made on the 11th day of November. 1871, must be regarded as “alienations” within the meaning of the statute as of that day, and the law in such a case taking no account of the fractions of a day, the alienations must .be considered as all made at the same time. It is true, that to make a complete and perfect alienation of real estate,, in the strict sense of that term, it is necessary at law that the title should be conveyed by a proper instrument; and in equity, that the purchaser should have the right to call for the title without condition. But we are not disposed to give to the terms “aliened,” “alienees,” “alienations.” employed in the statute, a strict technical meaning. It was the purpose of the legislature in enacting the section (the 10th) before quoted, to adjust the equities inter se of several purchasers of different portions of real estate subject to a common lien, and on the recommendation of the revisors (Report, 918, 919), settle the law as to which there had been some diversity in the *decisions of this court, in conformity with the opinion of a majority of the court, consisting of three judges, in McClung v. Beirne,
10 Leigh 394. These equities would seem to require that such a purchaser should be considered an “alienee” within the statute as soon as he makes a valid contract for purchase —a contract which a court of equity would enforce specifically, and which he in fact after-wards carries fully into execution. This construction is in harmony with the equitable doctrine, universally recognized and accepted, touching the relative rights and interests of vendor and vendee under a contract for the sale of real estate, based on the maxim that what has been agreed to be done shall be considered'as done. That doctrine is thus stated by Mr. Justice Story: “In the view of courts of law. contracts respecting lands or other things, of which a specific execution will be decreed in equity, are considered as simple' executory agreements, and as not attaching to the property in any manner, as an incident, or as a present or future charge. But courts of equity regard them in a very different light. They treat them, for most purposes, precisely as if they had been specifically executed. Thus, if a man has entered into a valid contract for the purchase of land, he is treated in equity as the equitable owner of the land, and the vendor is treated as the owner of the money. The purchaser may devise it as land even before the conveyance is made, and it passes by descent to his heir as land. The vendor is deemed in equity to stand seized of it for the benefit of the purchaser; and the trust attaches to the land, so as to bind the heir of the vendor, and every one claiming under him as a.purchaser, with notice of'the trust. 1 Story’s Eq. Juris., § 790.
Again, * * * “Where a contract is made for the sale of land, the vendor is, in equity, immediately *deemed a trustee for the vendee of the legal estate; and the vendee is deemed a trustee for the vendor of the purchase money.” Id., § 1313. See, also 1 Sugden on Vendors, 175 (bottom page), and numerous cases cited in note.
Applying these equitable principles, as we think' should be done, in the construction of the statute in question, we are of opinion, that the several'purchasers from the executor of Hughes at the sale on the 11th day of November, 1871, became on that day andas at the same time “alienees” within the meaning of that term as used in the statute. The several contracts of the respective parties for the purchase were valid contracts— such as a court of equity would have specifically enforced and they were carried into effect by the parties themselves.
It follows, that after subjecting the land held by Oberdorfer to the satisfaction of the judgments, if any part of the'judgments remain unpaid, such parts should be apportioned among the alienees from Hughes’ executor according to the relative values of their respective lots on the day of sale (November 11, 1871), and each lot should be subjected in the manner indicated and on the principles applied as among co-sureties in Horton & als. v. Bond, 28 Gratt. 815, 825, 836, and as among devisees in Lewis & als. v. Overby’s adm’r & als., 31 Gratt. 601, 620.
*515 The decree of the circuit court, rendered May 22.1878, is in conflict with the foregoing view, and that decree and also so much of the decree rendered by that court February 9, 1877, as determines the liability of the land sold by Phillips to Hughes to be prior to that of the land sold to Boatwright and now held by Oberdorfer, must be reversed and the cause remanded- for further proceedings to be had therein, in order to affinal decree, in conformity with the views expressed in this opinion.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that of the lands in the bill and proceeding mentioned aliened by William B. Phillips, the lot sold to John G. Boatwright, and now held by the appellee B. Oberdorfer is liable to the judgments in the proceedings also mentioned, and should be subjected to the satisfaction of said judgments next after the lot aliened to Orange Patterson, and before the lot aliened lo John C. Plughes should be resorted to for the satisfaction of said judgment: and that after the lot held as aforesaid by the said Oberdorfer shall have been subjected to the satisfaction of said judgments, for the residue of said judgments, if any, then remaining unsatisfied, the several lots or parcels of land aliened by the executor Hughes, are liable and shouldbe subjected tothepayment of said residue ratably, according to the respective values, of said lots on the 11th day of November, 1871, (the day on which they were sold by said executor), in the manner indicated and on the principles as applied between co-securities in Horton & als. v. Bond, 28 Gratt. 815, 825, 826. and as between devisees in Lewis & als. v. Overby’s adm’r & als., 31 Gratt. 601, 620: and that the decree aforesaid rendered by the said circuit court, on the22dday of May, 1878, is wholly erroneous; and so much of the decree aforesaid rendered by the said circuit court on the 9th day of February. 1877. as is inconsistent and in conflict with the opinion hereinbefore ’^expressed, is also erroneous: therefore it is decreed and ordered, that the said decree of May 22d, 1878, be wholly reversed and annulled, and so much of the said decree, of February 9th, 1877, as is above declared to be erroneous, be also reveresd and annulled; and that the residue of the last-named decree be affirmed: and that the appellants recover against the appellee B. Oberdorfer. their costs by them expended in the prosecution of the appeal aforesaid here: and this cause is remanded to said circuit court, with directions to order such accounts and take such further proceedings in the cause as may be necessary and proper, in order to final decree, in conformity with the views and opinion hereinbefore expressed.
All of which is ordered to be certified to the said circuit court of Albemarle county.
Decree reversed.