MONCURE, J.
The questions presented by the first and second bills of exception in this case, are as to the admissibility of general reputation, and of the individual opinions of witnesses, to prove the title of Christopher Pryor, under whom the defendant in error claims the land in controversy.
It is a general rule that hearsay evidence is inadmissible. It is also a general rule that the opinions of witnesses are not admissible evidence. There are certain well defined exceptions to each of these general rules ; but it is needless to state them. They may be seen by reference to 1 Stark. Evi. p. 30-35, and 153, 4; and 1 Greenl. Evi. § 440. It is sufficient to say that this case falls under the general rules aforesaid, and not under any of the exceptions to them. Therefore, the Circuit court erred in overruling the objections of the plaintiffs in error to the questions and answers mentioned in the first and second bills of exception. See Doe v. Thomas, 14 East’s R. 323; Mima Queen v. Hepburn, 7 Cranch’s R. 290; Ellicott v. Pearl, 10 Peters’ R. 412.
The questions presented by the third bill of exceptions are, as to the admissibility of the paper purporting *to be an official copy of the will of Christopher Pryor ; and of the testimony offered by the plaintiffs in error in resistance of the reading of the said paper in evidence to the jury.
The clerk’s office of Gloucester County court, with all the records thereof, was destroyed by fire in 1820. The paper in ques *580 tion is an official copy of a paper which was recorded in that county on the 14th of April 1846, in pursuance of the second section of the act passed February 19,1840, entitled “an act concerning the preservation of records;” which declares, “ that if the deed book containing the record of any conveyance, will, testament or other writing, or papers which may lawfully be recorded in any court of this commonwealth, or containing the record of any suit, judgment, decree or order of any court, be stolen, destroyed or mutilated, it shall be lawful for the clerk of such court, upon the production. to him of the original writing so recorded, or a copy thereof duly attested, or a copy of any such record, judgment, decree or order duly attested, to record the same again upon the application of any person who may require it to be done, and to charge to such person the same fee as may have been chargeable for recording the same in the first instance. Every such record shall state whether it was made from the original writing or a copy thereof, and also the form of its authentication or attestation ; and thereupon the conveyance, will, judgment, decree, order or other writing so recorded, shall be held and taken to be duly, recorded, a'nd the record thereof, or a copy of the same, shall in like manner have the same effect as the original record thereof in the book stolen, destroyed or mutilated, or a copy thereof would have been entitled to.”
The paper in question appears on its face to be in strict conformity with the statute in all respects ; and there can be no doubt but that it is admissible evidence. *The only question is, whether the evidence offered to show that the paper admitted to record as aforesaid, was not in fact duly attested, is admissible evidence. I am of opinion that it is not.
The object of the statute is to reinstate, as far as possible, a destroyed record; to provide something which shall be equivalent to that which is destroyed. Where the record of a deed or will has been destroyed, and the original, or a copy of the deed or will duly attested, is in existence, there is no difficulty in attaining this object: and the legislature has therefore provided that the clerk of the court whose record is destroyed, shall record the deed or will again, upon the production to him of such original or copy ; and that thereupon the deed or will shall be held and taken to be duly recorded, and the record thereof, or a copy of the same, shall in like manner have the same effect as the original record thereof, or a copy of it would have been entitled to. The paper so produced to the clerk for record must appear on its face to be duly attested; and to show whether it is or not, the statute cautiously provides, that “every such record shall state whether it was made from the original writing, or a copy thereof, and also the form of its authentication or attestation.”
If the paper does not appear on its face to be duly attested, the clerk has no power to admit it to record, and his act in so doing is void. But if it does appear on its face to be duly attested, the statute confers on him the power to admit it to record, and charges him with the duty of deciding whether or not the attestation be genuine. This duty, it is true, is quasi judicial in its nature ; but it is not unlike many other duties with which he is chargeable; and the legislature reasonably supposed that he would know whether his own attestation, or that of one of his predecessors in office, was genuine; and that, being a sworn public officer, *bound by bond with surety for the faithful discharge of the duties of his office, he might safely be intrusted with the performance of this duty. He can easily ascertain, and it is his duty to ascertain, if he does not already know, whether the person whose name is signed to the certificate of probat was clerk of the court at the date of the certificate, and whether the signature was made by such clerk, or by his authority; and the law gives him credit for a proper discharge of this duty. His decision in favor of the genuineness of the attestation is final and conclusive; at least in any collateral proceeding in which the record or a copy of it may be given in evidence. This, I think, is the necessary construction of the statute, and results from the nature of the act which it authorizes the clerk to perform. Evils and inconveniences may sometimes, perhaps, result from it; but not so great as would result from a different construction. The object of the record is to give notice to the world, and to afford permanent evidence-for the benefit of all persons concerned. If, though regular and legal on its face, it could at any distance of time and in any collateral proceeding be impeached by evidence aliunde, it would be of little or no value, but would occasion surprise, and be a fruitful source of injury. In a proper case for relief it may be obtained by a suit in equity, or perhaps by an action on the official bond of the clerk. Horsley v. Garth, 2 Gratt. 471, was considered a proper case for equitable relief.
Under the law which existed on the subject when the statute of 1840 was passed (1 Rev. Code 1819, p. 516), the clerk could not record a, paper of which the original record was destroyed, without a previous order of the court of which he was clerk. Upon the court devolved the judicial duty, if it may be so called, of deciding upon the genuineness of the attestation; and upon the clerk the merely ministerial duty of spreading the paper again upon the record book, if so ordered by the court. There could be no dóubt, I presume, of the finality and conclusiveness of an order of probat under that law, in the absence of any appearance of irregularity on the face of the proceedings. The statute of 1840 substitutes the clerk to the place of the court; and devolves on him the judicial'as well as the ministerial duty. The legislature could not have intended that a probat under that statute should have less force and effect than under the pre-existing law.
The construction I have put upon the statute is not only in accordance with its literal terms and obvious intention, but also, I think, with the well settled principles of the law of evidence, as laid down by the elementary *581 writers. In the case of The King v. Hopper, 3 Price’s R. 495, it was unanimously decided by the Court of exchequer, that the enrollment of a. deed of bargain and sale by a clerk under the statute of enrollments, 27 Hen. 8, is itself a record, against the verity of which there can be no averment. Indeed the difficulty, if any, in that case seemed to be whether the date was a part of the enrollment ; the statute not expressly requiring that it should have a date. The court decided that it was.
But without looking elsewhere for authority on this subject, the cases of Harkins v. Forsyth, 11 Leigh 294, and Carper v. McDowell, 5 Gratt. 212, seem to be conclusive of the question.
In Harkins v. Forsyth it was held that the certificate of justices, pursuant to the directions of the statute, of the privy examination of a feme coyert, is conclusive in a collateral proceeding, and evidence to prove that the deed was not fully explained to her, is inadmissible. The observations of Tucker, P., in that case (in which the other judges concurred) are very applicable to this.
In Carper v. McDowell, the only opinion delivered *was that of Judge Baldwin, in which it does not expressly appear that the other judges concurred. It is only stated that they concurred in the decreé ; and it cannot therefore be known o; > what particular grounds they respectively based their judgment. Judge Baldwin placed his upon the ground that the certificate of a clerk of the acknowledgment of a deed in his office by the parties thereto, is conclusive, and cannot be impeached by extrinsic evidence, in a collateral proceeding, that the deed was in fact acknowledged out of the office. He was of opinion that the registration of a deed under our law is the exercise of a probat jurisdiction. “It follows (he says) from the nature and purposes of such a jurisdiction, that though its proceedings are often and most generally ex parte, yet that when perfected they are evidence for and against the whole world; that they cannot be impeached by extrinsic evidence in collateral controversies concerning the rights to property ; and that as a general rule they cannot be so impeached even directly in a suit instituted for the very purpose. If this were otherwise, the obvious result would be to defeat, in a great measure, the objects of the probat jurisdiction, and to introduce much uncertainty and confusion into the administration of justice.” — “It is immaterial whether the probat jurisdiction be vested in a court or it) a commissioner, in a judicial or a ministerial officer, in a tribunal established or an officer appointed for the sole purpose of its exercise, or in tribunals or officers established or appointed for other purposes.”— “The registration itself, when completed, and appearing upon its face to have been had conformably to law, is the final act of an exclusive jurisdiction, designed to establish amongst all persons, and in all time, the very matter which extrinsic evidence would draw into question.” — “The degree of credit due to this record evidence does not depend upon the question, whether*this or that part of it, or the whole of it taken together, is to be considered as a judicial or as a ministerial act; but upon the consideration that it is an institute of the law, for purposes of a general, public and permanent interest, which cannot be otherwise accomplished.”
These observations of the learned judge are as applicable to this case as to that in which they were made; and if they are sound, as I think they are, they put an end to the question I am now considering.
The counsel for the plaintiffs in error argued that the two cases last referred to, only decided that the certificates of the justices and clerk were conclusive of the facts certified; so that it could not be denied, in the former case, that the wife had been privily examined by the justices, nor in the latter that the deed had been acknowledged in the clerk’s office: whereas, in this case, there is no question as to the truth of the fact certified by the clerk in his certificate of the admission of the paper to record as a copy of the will of Christopher Pryor. I think the evidence offered and excluded plainly tended to contradict the certificate ; and so was inadmissible, on the principle of the two cases referred to. The certificate is that the copy of the last will and testament of Christopher Pryor to which it is annexed, was duly authenticated and attested by Thomas Nelson, a former clerk of the court. The evidence offered and excluded tended to show that the said copy was not ditlv authenticated and attested by Thomas Nelson, a former clerk of the court. Here is an express denial of an important fact certified by the clerk who admitted the copy to record. His certificate is at least as conclusive of that fact as the certificate of the justices and clerk were conclusive of the facts of privy examination and acknowledgment in the two cases referred to. It can surely make no difference that the facts certified in those cases depended on the personal knowledge of the justices and clerk; and 'x'the fact certified in this case was a conclusion of the judgment of the clerk from the evidence produced before him. This would be to place the certificate of a fact known to be false, on higher ground than the certificate of a fact believed to be true ; to make a ministerial act conclusive, and a judicial one not so.
The same counsel further argued that, according to several cases decided by this court, which he cited, a paper acquires no validity from recordation unless it be properly recorded; and that the evidence offered and excluded tended to show that the paper in this case was not properly recorded. The answer to this argument has, in effect, been already given. It is that the certificate of probat, which is conclusive in a collateral proceeding such as this is, shows that the paper was properly recorded.
I think there is nothing in the foregoing opinion inconsistent with the case of Johnston & wife v. Slater, 11 Gratt. 321. It was there decided that a husband is not a compe *582 tent witness, within the meaning- of the registry acts, to prove the execution of a deed to his wife ; and that evidence of the fact of his being her husband, is admissible, in a collateral proceeding, to avoid the registration. Nothing was said in the opinion, nor I believe in the argument in that case, about the effect of the registration as a probat proceeding. It was contended in the argument that the object of registration is to give notice ; and that that object is equally well attained, whether the witnesses be competent or incompetent. This view was sustained by two cases cited from the North Carolina Reports, viz: Jones’ lessee v. Ruffin, 3 Dev. R. 404; McKinnon v. McLean, 2 Dev. & Bat. 79, Law Reports. But this court was of opinion that as, under our law and the decisions upon it, the record of a deed duly recorded, or an official copy thereof, is primary evidence, not only of the registration but of the deed itself, in any Controversy; the witnesses by whom the deed is proved for record must be competent, on the same principle on which a witness by whom a deed is proved on the trial of a cause must be competent. It was considered that the deed in that case was not duly recorded ; that it was in fact proved by but two witnesses instead of three, as the law then required; the husband of the grantee being in effect no witness. If the certificate of probat had shown that the deed was proved by only two witnesses, it would not have been legally recorded. Maxwell v. Light, 1 Call 117. So, if it had shown that the third witness was the husband of the grantee, and therefore incompetent. It did show that a person who in fact was the husband of the grantee was one of the three witnesses who proved the deed. And evidence aliunde of that fact was not inconsistent with the certificate, and was therefore admissible. The evidence showed that the deed was not legally recorded; that the case was, as it were, coram non judice. In this .case the evidence offered and excluded was in conflict with the certificate of probat upon a fact which was within the cognizance of the clerk, and as to which his certificate is conclusive. '
I am of opinion that the Circuit court did not err in giving the instruction mentioned in the fourth bill of exceptions. This follows as a necessary consequence from what I have already said.
It is unnecessary to express any opinion upon the question presented by the fifth and last bill of exceptions, as it is not likely to arise in any future trial of the case.
I think the judgment should be reversed, with costs to the plaintiffs in error, the verdict set aside, and the case remanded for a new trial to be had therein.
SAMUELS, J., concurred in the opinion of Moncure, J.
*LEE, J.,
was disposed to affirm the judgment throughout; but yielded to the views of the other judges, and concurred in the opinion of Moncure, J.